412 So.2d 397 (1982)
SQUARE G. CONSTRUCTION COMPANY and U.S. Fidelity & Guaranty Company, Appellants,
v.
Handsome GRACE, Appellee.
No. ZZ-43.
District Court of Appeal of Florida, First District.
March 25, 1982.
Rehearing Denied April 29, 1982.
*398 John R. Gierach, Orlando, for appellants.
Curtis B. Goff, Orlando, for appellee.
PER CURIAM.
The claimant in this workers' compensation case, Handsome Grace, was awarded (1) evaluation of his back disability by a surgeon to be chosen by agreement; (2) temporary total disability compensation from August 7, 1980 to the date of hearing on September 23 and, in the pro forma language of Section 440.15(4)(c), during the continuance of such disability; and (3) payment for two prescriptions dated August 19 and September 2, 1980, described in a September 15 notice to controvert.
Carrier's appeal challenges the payment for the prescriptions on the ground that only Dr. Shea was authorized, and contests the award of compensation on the ground of lack of competent substantial evidence of medical disability and claimant's failure to return to work. We affirm the award on consideration of the deputy's finding of emergency treatment and further finding of claimant's physical inability to do his job during the period in question, based on the deputy's observation of claimant and testimony as to the prescribed medications including "muscle relaxers and other pills that make him drowsy which would prevent him from operating the heavy equipment, which was his job at Square G at the time... ." We note that claimant's testimony before the deputy was contemporaneous with the six-week period of temporary disability in question, and the only other evidence before the deputy (except documentary exhibits) was a deposition by Dr. Shea, who evaluated claimant on August 7 and noted continued complaints but concluded at that time he would not impose work restrictions or provide treatment or medication.
Following his accident on May 26, 1980, claimant was first treated by the hospital emergency room physician, Dr. Sangadraca, and in the following month by a series of doctors named on the parties' record stipulation as Drs. Brunson, Wright, and Kim, while he was hospitalized from June 6 to 21.[1] A report by Dr. Shea submitted to carrier on August 11 shows two appointments, July 14 and August 7, for claimant who "comes to this office for orthopaedic evaluation." The report is largely negative but notes moderate to minimal lumbar spasm, movement in a very stiff painful manner, absence of any myelogram study, and concludes that MMI was reached and "there is nothing orthopaedically."
Dr. Shea's deposition confirms that claimant was provided no return appointment. Claimant testified he requested additional care by calling Dr. Shea's office but was unable to get an appointment. His attempt to relate what the doctor's secretary told him was excluded as hearsay. The date of the controverted prescription would indicate that he visited the hospital emergency room within a week or so after Dr. Shea's discharge, because, in substance, he did not *399 know he could see any other doctor when his continuing symptoms recurred in severe form. The hearing before the deputy followed shortly after the carrier controverted payment of the prescription. Under the circumstances presented we are unable to reverse the deputy's conclusion that the treatment was of such emergency character as not to violate the provisions of Section 440.13 with respect to authorization.
Claimant testified in some detail as to physical requirements of his job in operating heavy equipment and as to past experience, having finished 3rd grade in school: "I've done farm work, picked cotton, plowed mules, plowed a tractor, and also when I went into construction work I be pressing manholes, operated all different kinds of heavy equipment." We conclude against reversal of the deputy's resolution of the clear credibility issues before him as to temporary disability for reasons detailed below.
Recent decisions have properly emphasized the necessity for efforts to test employability when there is no substantial evidence of medical inability to work during a period of claimed temporary disability.[2] Those opinions, however, have expressly referenced the earlier decision in Mendivil v. Tampa Envelope Manufacturing Co., 233 So.2d 5 (Fla. 1970), which clearly stated what Florida workers' compensation law has always recognized: That, in proper circumstances, temporary medical or functional disability may be proved by lay testimony:
... lay testimony is often sufficient to sustain a compensation award, even though it conflicts with medical testimony ... . (e.s.)
See also Crowell v. Messana Contractors, 180 So.2d 329, at 330 (Fla. 1965):
... we have held that opinions of medical experts are not conclusive and may even be disregarded by the deputy `in favor of lay testimony,' ...; that the deputy may consider not only lay testimony but his personal view of the claimant as well, Hernandez v. DeCarlo, 116 So.2d 429 (Fla. 1959); and that a conclusion may be based on the testimony of a claimant to the exclusion of a medical expert, Star Fruit Co. v. Canady, 159 Fla. 488, 32 So.2d 2 (1947). (e.g.)
We accordingly affirm the award in the present case because the medical evidence necessary to show compensable temporary disability (or inability to attempt a return to employment) may include claimant's testimony as to his condition, including reaction to prescribed medication and physical limitations, even after discharge and release for work by his treating physician.[3] Decisions rejecting a claimant's bare *400 complaints as insufficient to excuse lack of work effort, in certain contexts, are easily distinguished on their stated facts.[4] We find no statutory change which reverses the above cited ordinary established rules of evidence or creates new conditions precedent for such awards.[5]
The order appealed is accordingly AFFIRMED.
ERVIN and WENTWORTH, JJ., concur.
JOANOS, J., concurs in part and dissents in part with opinion.
JOANOS, Judge, concurring in part and dissenting in part.
I concur in the majority's affirmance as to the payment for the prescriptions. However, I dissent from their affirmance of the award of temporary total disability compensation and would reverse on that point. My review of the evidence has convinced me that the point is controlled by the opinion in Commercial Carrier Corp. v. Bennett, 396 So.2d 847 (Fla. 1st DCA 1981). In that case, this Court reversed an award of temporary total disability compensation where claimant's physician said that claimant could return to work, but the claimant testified that he was unable to work and did not attempt to return to work because of the pain of the injuries. At page 848 of that opinion, the Court stated:
Since there was no medical evidence that claimant was unable to work during the period in question due to his injuries, the claimant is precluded from an award of TTD benefits without making a conscientious effort to return to work... . Also, in the absence of medical evidence showing that claimant is unable to work, he could not establish entitlement to TTD benefits merely by testifying that he did not make any effort to return to work because he did not feel able to... . [cited omitted]
NOTES
[1] The record indicates one prior back injury in 1977, known to employer, with full recovery and asymptomatic status for the year or so claimant worked for Square G.
[2] See Commercial Carrier Corp. v. Bennett, 396 So.2d 847 (Fla. 1st DCA 1981), citing Walter Glades Condominium v. Morris, 393 So.2d 664 (Fla. 1st DCA 1981). Although the work search requirement in Exxon Co., U.S.A. v. Alexis, 370 So.2d 1128 (Fla. 1978), originally relating to assessment of permanent disability, has been for good reason applied to temporary disability by requiring good faith in testing work capability after medical release, the principle is plainly subject to qualification with respect to short periods or particular circumstances including but not limited to a claimant's testimony as to physical conditions and symptoms involving ordinary evidentiary credibility standards as opposed to indispensable medical expertise. Cf., Orange County Board of County Commissioners v. Brenemen, 233 So.2d 377 (Fla. 1970). See also Scotty's, Inc. v. Jones, 393 So.2d 657 (Fla. 1st DCA 1981), and Deck's Inc. of Florida v. Wright, 389 So.2d 1074 (Fla. 1st DCA 1980), at 1076: "reasonable medical probability may be established by medical or lay testimony ... as to conditions and symptoms which are within the actual knowledge and sensory experience of the claimant." (e.s.)
[3] With respect to a claimant who testified that back pain and immobility prevented work, in conflict with a physician's opinion that he was physically able to work, the Court has found that the trier of fact "had a right, as a matter of law, to accept the opinion of the Tampa physician on this point or to reject it and base his conclusions on the testimony of the claimant... ." Star Fruit Co. v. Canady, 32 So.2d 2, at p. 4 (Fla. 1947). Later orders finding certain subjective complaints insufficient, absent work effort or medical evidence, do not limit medical evidence to expert testimony nor do they expressly or implicitly remove from the deputy his function in determining credibility of a claimant's testimony as to physical capability when the issue does not necessarily involve medical expertise. Action Pool Builders v. Grant, IRC Order 2-3743 (1979); Martin Marietta Corp. v. Johnson, 7 FCR 355 (1973).
[4] See Commercial Carrier Corp. v. Bennett, note 2, supra, involving a six month period after claimant's release for work, without evidence that he sought either further medical attention or return to employment; Cardinal Industries, Inc. v. Dawkins, 392 So.2d 368 (Fla. 1st DCA 1981), involving impropriety of continued temporary total disability compensation for simple complaints of pain when claimant failed to follow recommendations by three treating physicians that he should attempt to return to work; note 2, supra, Walter Glades Condominium v. Morris, involving an eighteen month period after discharge, without evidence of any effort at employment or medical attention for such period.
[5] Provisions of the law as currently amended with respect to permanent impairment rating require use of administrative guidelines "based upon medically or scientifically demonstrable findings" with interim use of the 1977 AMA Guides, § 440.15(3)(a) 3, and further limit permanent impairment ratings to the degree found by any physician, § 440.25(3)(b). The specificity of such prescriptions suggests an intent that evidentiary burdens are not otherwise altered.