PER CURIAM.
This is a workers’ compensation case. Claimant suffered a compensable industrial accident on July 25, 1979. On April 25, 1980, the deputy commissioner entered an order finding the claimant’s average, weekly wage to be $160.05, which entitled her to compensation at 60% or $96.03. On November 6, 1980, the deputy commissioner found claimant had reached maximum medical improvement on October 7, 1980.
The employer/carrier appeals a subsequent order, entered on April 22, 1981, in which the deputy commissioner, relying on Gunite Works, Inc. v. Lovett, 392 So.2d 910 (Fla. 1st DCA 1980), modified the April 25, 1980 order by increasing claimant’s compensation rate to 66%%. In addition, he modified the November 6,1980 order by revising the date of maximum medical improvement to January 21, 1981. The deputy commissioner also found claimant to have a 10% impairment of the body as a whole, with a loss of wage earning capacity equal to 55% of the body as a whole.[1] We reverse.
The employer/carrier raises five issues, three of which require discussion. The first is that the deputy commissioner erred in revising claimant’s rate of compensation. We agree. The deputy commissioner’s reliance on Gunite Works, Inc. v. Lovett, was misplaced. In that case, we held that the effective date of Section 440.-12(2)(a) was July 1,1980. This section does not apply to the case at bar. Instead, Section 440.15(2)(a) applies. That section was effective August 1, 1979. State Department of Transportation v. Houlihan, 402 So.2d 490 (Fla. 1st DCA 1981). Claimant’s accident occurred prior to the effective date of this section, and the applicable compensation rate became fixed at that time. Houlihan. Accordingly, the deputy commissioner erred in increasing claimant’s compensation rate.
The employer/carrier next challenge the deputy commissioner’s revision of the claimant’s date of maximum medical improvement. The record contains no evidence which would support a revision of claimant’s maximum medical improvement date. Where there is no competent, substantial evidence to support the deputy commissioner’s finding, it must be reversed.
Finally, the employer/carrier challenge the deputy commissioner’s finding that claimant has sustained a 55% loss of wage earning capacity. While the order is somewhat unclear, it appears that the deputy commissioner found that claimant had not conducted an adequate work search.[2] In absence of a proper work search, which we find to be the case here, an award of loss of wage earning capacity benefits is improper.[3] However, in view of the deputy’s findings and the substantial evidence pointing to limitations upon claimant’s abil *899 ity to compete in the job market, the interests of justice require that claimant be permitted to present further evidence as to her loss of wage earning capacity. See, Flesche v. Interstate Warehouse and U. S. Fidelity & Guaranty Company, 411 So.2d 919 (Fla. 1st DCA 1982), particularly footnote 14.
We find no error in the provisions of the order requiring further medical care by Dr. Toward, and Dr. Robiner. The order of the deputy commissioner is reversed, in part, and affirmed in part, and the cause is remanded for further proceedings not inconsistent with this opinion.
ROBERT P. SMITH, Jr., C. J., and LARRY G. SMITH and WIGGINTON, JJ„ concur.

. The November 6, 1980 order contained no ruling on the issue of permanent disability, this issue being initially addressed in the April 22, 1981 order.

. Paragraph 19 of the order states:
Considering the claimant’s impairment, her age, and the physical restrictions medically advised, I find that the claimant has suffered a loss in her ability to compete on the open labor market. Although the claimant has conducted an unsuccessful work search, I find that she has not fully explored her residual capabilities. I accept the medical testimony that there are various kinds of physical work that the claimant can perform, despite her lifting limitations. At such point as the claimant discontinues the use of her cervical collar, as medically recommended, she should be able to secure steady employment. Nonetheless, it is apparent from the seriousness of her condition and its affect upon her activities, that the claimant has suffered a substantial loss in her wage earning capacity equal to 55% of the body as a whole.
The evidence discloses that claimant wore her cervical collar to each job interview, and failed to obtain or request from her doctor a medical release indicating her ability to work and designating what limitations or restrictions would be placed on her work activities.

.In addition to a lack of adequate work search evidence, we find in the record no basis upon which the deputy commissioner could have determined the percentage of wage earning capacity loss suffered.