417 So.2d 1156 (1982)
STATE of Florida, Sunland Center and Division of Risk Management, Appellants,
v.
Blanche CAMPBELL, Appellee.
No. AB-356.
District Court of Appeal of Florida, First District.
August 13, 1982.
*1157 Bernard J. Zimmerman and W. Michael Miller of Akerman, Senterfitt & Eidson, Orlando, for appellants.
George J. Adler of Meyers, Mooney, Adler & Hammond, Orlando, for appellee.
THOMPSON, Judge.
The employer/carrier challenge a workers' compensation order, contending that the deputy commissioner (deputy) erred in awarding the claimant temporary total disability (TTD) benefits from February 21, 1980, to July 29, 1980; in awarding wage loss benefits from August 1, 1980, and continuing; and in ordering reimbursement of taxable costs. We reverse, in whole or in part, each of these awards, except the award of reimbursement of taxable costs.
The claimant suffered a compensable injury on September 5, 1979, and first sought treatment for the injury on September 13, 1979. Her physician, Dr. Evans, could find no anatomic change attributable to the accident, but he provided conservative care and, on three occasions, recommended that claimant remain off the job for periods of a week to two weeks. Claimant worked intermittently during those periods when she was not under Dr. Evans' restriction. As of November 21, 1979, Dr. Evans was still unable to find objective signs of injury, so he discharged claimant for referral to an orthopedic specialist.
Claimant next sought treatment from Dr. Stanford, an orthopedic surgeon. Stanford determined that claimant had a slight loss of muscle mass of the left leg and a mild limitation of range of motion of the spine. He diagnosed chronic low back strain, but advised claimant that she could continue working. Stanford subsequently hospitalized claimant for a week of conservative treatment but on February 20, 1980, he discharged her to return to work without restriction. Because claimant continued to have a limited range of motion of the spine, Dr. Stanford determined that she had a three percent (3%) permanent impairment of the body as a whole. However, he attributed the impairment to her chronic low back strain, and could not associate the impairment with the industrial accident within reasonable medical probability. On February 21, 1980, claimant quit her job with the employer, claiming that she was no longer able to perform her duties.
On June 6, 1980, claimant sought further treatment from Dr. Urrichio, another orthopedic surgeon. Dr. Urrichio performed a thorough examination, and ordered testing by electromyogram, but could find no objective signs of injury. Dr. Urrichio provided conservative care and prescribed, inter alia, weight loss and exercise. At no time during his treatment of claimant did Dr. Urrichio feel that she was unable to work, and on July 29, 1980, he actually advised her that her condition would improve if she returned to work. Dr. Urrichio felt that the claimant's range of motion was normal for a person of her weight, and he believed that there was a reasonable medical probability that claimant had no anatomic impairment resulting from her industrial accident. Dr. Urrichio found that claimant had reached maximum medical improvement (MMI) on or before September 10, 1980, the date he discharged her to return to work.
TTD benefits are payable only for the healing period during which a claimant is totally disabled and cannot work due to the injury. Where there is no medical evidence of inability to work, the claimant can establish entitlement to TTD benefits only by demonstrating that she has conscientiously attempted to obtain employment. *1158 Tallahassee Coca-Cola Bottling Company v. Parramore, 395 So.2d 275 (Fla. 1st DCA 1981); Glades Condominium v. Morris, 393 So.2d 664 (Fla. 1st DCA 1981). Here, claimant admitted that she did not attempt to obtain any employment from February 20, 1980, until sometime in August, 1980. Her testimony that she was unable to work is insufficient to support an award of TTD benefits. Cardinal Industries, Inc. v. Dawkins, 392 So.2d 368 (Fla. 1st DCA 1981). Because no work search was conducted, and because no rational interpretation of the medical evidence could lead to a conclusion that claimant was not able to work, the award of TTD benefits from February 20, 1980 to July 29, 1980 is reversed.
The deputy found that claimant reached MMI on September 10, 1980, and awarded wage loss benefits from August 1, 1980 and continuing. An award of wage loss benefits for any period prior to a claimant's MMI date is an award of temporary partial disability (TPD) benefits and is not dependent upon a finding that claimant has suffered permanent impairment. Therefore, the award of wage loss benefits for the period of TPD from August 1, 1980 to September 10, 1980 is affirmed. However, a claimant must show the existence of permanent impairment in order to establish entitlement to wage loss benefits for any period after her MMI date. In this case, the deputy's award of continuing wage loss benefits for the period after claimant's MMI date was erroneous, because the evidence is insufficient to support a finding that claimant suffered any permanent impairment as a result of her industrial accident.
Permanent impairment is defined in Section 440.02(21), Florida Statutes (1979) as "any anatomic or functional abnormality or loss, existing after the date of maximum medical improvement, which results from the injury." The pertinent portions of Section 440.15(3), Florida Statutes (1979) state:
(3) PERMANENT IMPAIRMENT AND WAGE-LOSS BENEFITS. 
(a) Impairment benefits.

... .
3. In order to ... establish more certainty and uniformity in the rating of permanent impairment, the Division shall establish and use a schedule for determining the existence and degree of permanent impairment based upon medically or scientifically demonstrable findings. The schedule shall be based on generally accepted medical standards for determining impairment and may incorporate all or part of any one or more generally accepted schedules used for such purpose, such as the American Medical Association's Guides to the Evaluation of Permanent Impairment. On August 1, 1979, and pending the adoption, by rule, of a permanent schedule, Guides to the Evaluation of Permanent Impairment, copyright 1977, 1971, by the American Medical Association, shall be the temporary schedule and shall be used for the purposes hereof.
(b) Wage-loss benefits. 
1. Each injured worker who suffers any permanent impairment, which permanent impairment is determined pursuant to the schedule adopted in accordance with subparagraph 3 of paragraph (a), may be entitled to wage-loss benefits under this subsection. Such benefits shall be based on actual wage-loss... .
2... . Whenever a wage-loss benefit as set forth in subparagraph 1. may be payable, the burden shall be on the employee to establish that any wage loss claimed is the result of the compensable injury.
Dr. Urrichio testified that there was a reasonable medical probability that claimant did not have any permanent impairment attributable to the accident. He associated claimant's limited range of motion with her obesity, and made no medically or scientifically demonstrable finding of impairment due to anatomic change. In effect, his testimony was that claimant's range of motion was normal for a person of her physique. Dr. Stanford assigned claimant a rating of three percent (3%) permanent impairment to the body as a whole, based solely on the finding that she had a limited range of motion. His testimony *1159 with respect to causation was that it was "reasonable to assume" that the accident contributed to some portion of claimant's impairment. In view of the fact that Dr. Stanford would not attribute any of claimant's impairment to her industrial accident within reasonable medical probability, it must be held that his nebulous and imprecise testimony was insufficient to establish the causal connection. Kashin v. Food Fair, 97 So.2d 609 (Fla. 1957). It thus appears that claimant has failed to carry her burden of establishing that she has an accident-related permanent impairment entitling her to wage loss benefits under § 440.15(3), Fla. Stat. (1979).
Affirmed in part and reversed in part.
MILLS, J., concurs.
WENTWORTH, J., concurring and dissenting.
WENTWORTH, Judge, concurring and dissenting.
I concur in the majority opinion only insofar as it affirms temporary partial disability benefits, in part, and concludes that claimant has not established entitlement to an award of temporary total disability benefits. The testimony of the medical experts does not suggest that claimant was physically incapable of employment, and claimant admittedly failed to seek work during the time for which temporary total benefits were awarded. The claimant's testimony does not support temporary total disability and those benefits should not have been awarded in these circumstances. Cf., Duro Paperbag Manufacturing Co. v. Graham, 415 So.2d 809 (Fla. 1st DCA 1982); Square G Construction Co. v. Grace, 412 So.2d 397 (Fla. 1st DCA 1982). However, reversal of the temporary total award does not preclude the possibility of claimant's entitlement to temporary partial disability benefits for the period of time in question, and the cause should in my opinion be remanded for the deputy to consider the applicability and effect of § 440.15(4)(b), Florida Statutes, regarding "deemed" earning ability upon a claimant's voluntary limitation of income. See Duro Paperbag, supra; Pompano Roofing Co., Inc. v. O'Neal, 410 So.2d 971 (Fla. 1st DCA 1982).
As to that portion of the award relating to wage-loss after maximum medical improvement, such award is clearly dependent upon the existence of a permanent impairment. See § 440.15(3)(b)1, Florida Statutes. In the present case Dr. Stanford expressed the opinion that claimant has a permanent impairment of 3% of the body as a whole, and that a portion of this 3% impairment was caused by claimant's industrial injury. Although Dr. Stanford did not assign any specific percentage to the effect of the industrial injury alone, wage-loss benefits are not dependent upon a specific degree of impairment and the lack of such a quantitative determination does not require reversal of a wage-loss award. Cf., Tallahassee Memorial Regional Medical Center v. Snead, 400 So.2d 1016 (Fla. 1st DCA 1981). I would conclude that the award of wage-loss benefits subsequent to maximum medical improvement is not in error.
Accordingly, I would reverse the order appealed only insofar as it awards temporary total disability benefits. I would otherwise affirm the order, and remand the cause for the deputy to consider the applicability and effect of § 440.15(4)(b).