418 So.2d 389 (1982)
SANLANDO UTILITY CORPORATION and U.S. Fidelity & Guaranty Company, Appellants,
v.
William T. MORRIS, Appellee.
No. AI-2.
District Court of Appeal of Florida, First District.
August 18, 1982.
*390 John R. Gierach of Gierach & Ewald, P.A., Orlando, for appellants.
J. Michael Matthews of Fisher & Matthews, P.A., Altamonte Springs, for appellee.
ERVIN, Judge.
Under the 1979 workers' compensation law, claimant and appellee, William T. Morris was awarded temporary total disability (TTD) benefits, remedial care, and attorney's fees pursuant to Section 440.34(2)(c), Florida Statutes (1979). Because all of the doctors who rated the claimant found him to have achieved maximum medical improvement (MMI) or implicitly so found by rating him as permanently and partially disabled (PPD), we find that, as a matter of law, a TTD award was not proper based on the facts of this case. We reverse on all four points raised by the appellants and remand.
The claimant, a pipeline inspector, was injured while lifting a piece of asphalt on May 15, 1980. He was treated almost exclusively by Dr. Urbach until September 2, 1980, which was the point in time Urbach assigned as the date of MMI. The employer/carrier (e/c), appellants herein, paid medical and temporary disability benefits until this time, but upon receiving Urbach's medical report determining that the claimant was MMI, these benefits were terminated.
The claimant continued to have residual pains. During October, 1980 he saw Dr. Richards who rated the claimant as PPD. A February, 1981 visit to Dr. Blumen resulted in Blumen's diagnosis that the claimant had reached MMI at sometime prior to that date. Dr. Dewitt Stanford examined the claimant in late March, 1981 and found him to be PPD. Seven visits with Dr. Lindsey during the summer of 1981 afforded the claimant some relief from his pain. Although Dr. Lindsey did not rate the claimant as temporarily or permanently disabled, he did give him some injections to deaden his pains and decrease inflammation of his joints.
A claim for continued TTD benefits and remedial care was filed. The deputy commissioner rejected much of the foregoing medical testimony in awarding TTD benefits from December 15, 1980 and continuing for so long as the claimant remains in that condition. The deputy gave significant weight to Dr. Lindsey's report that he was able to improve claimant's condition, which we find to be in error, since Lindsey's care was merely palliative rather than remedial in nature. The deputy also judicially noticed that the Social Security Administration had accepted the claimant as "totally disabled" based on a report by a Dr. Kim. Unfortunately, neither the medical report of Dr. Kim nor the letter from the Social Security Administration was placed into evidence.
*391 Without these documents or testimony by Dr. Kim, it is impossible to determine whether the Social Security's acceptance of the claimant as totally disabled meant its intention to accept him as permanently or temporarily so disabled. Moreover, it was prejudicial error to base an order on reports and papers not placed into evidence. We recognize that we found harmless error in a deputy commissioner's consideration of a medical report not in evidence in Oriente Express Inn v. Rodriguez, 406 So.2d 55, 56 (Fla. 1st DCA 1981). That case is easily distinguished, because the erroneously considered report had no "significant bearing on the deputy's conclusions." Considering that Dr. Kim's medical report and the Social Security acceptance of the claimant as "totally disabled" are the only pieces of evidence that might medically refute the fact that the claimant has reached MMI, we find that "but for the error complained of, a different result would have been reached at the" hearing. Wallace v. Rashkow, 270 So.2d 743, 745 (Fla. 3d DCA 1972). Consequently, consideration of these documents cannot be said to have been harmless error and was improper.
The deputy commissioner was confronted on one hand with the claimant's bare complaints of pain, claimed inability to work, and the foregoing erroneously considered evidence, as the basis for finding that the claimant had not reached MMI. On the other hand, a phalanx of competent, expert medical opinion asserted that the claimant had achieved MMI. We recognize that in determining whether a claimant is temporarily disabled and what degree of disability he has, a deputy may in some instances credit lay testimony and reject contradicting medical opinion. See Square G. Construction Co. v. Grace, 412 So.2d 397 (Fla. 1st DCA 1982). However, this case does not present a question of whether a claimant may have sustained a temporary disability or indeed any degree of disability. Square G. is distinguishable, because the case before us presents a question as to whether the claimant could even be temporarily disabled when all of the competent medical evidence indicates that he has reached MMI.
We noted in Ardmore Farms v. Squires, 395 So.2d 268, 270 (Fla. 1st DCA 1981), that as to whether one has reached MMI, "A claimant's testimony may be considered on the question, but it cannot replace the treating physician's expert opinion as to when temporary disability ends and permanent disability begins." This is because the question of whether a claimant has reached MMI is essentially a medical question that is most persuasively answered by medical experts. Id.
Excluding consideration of the improperly considered medical reports, the essence of the deputy commissioner's determination was that the claimant had not reached MMI based upon the claimant's bare complaints of pain and assertions of inability to work in total derogation of the abundant expert medical opinion to the contrary. Clearly, the claimant's testimony in this case was not competent to sustain a finding that he was not yet MMI. In the face of substantial competent evidence, we recognize that factual determinations by a deputy commissioner are normally[1] not to be reweighed by an appellate tribunal even though substantial evidence may be marshalled to counter the deputy's determinations. Redding v. Cobia Boat Co., 389 So.2d 1003, 1004 (Fla. 1980); Croft v. Pinkerton-Hayes Lumber Co., 386 So.2d 535, 536-537 (Fla. 1980). However, this rule evaporates when, as here, there is no competent evidence to support a deputy's conclusions.
We think this case is factually similar to Gilbarco, Inc. v. LeRoux, 411 So.2d 1031 (Fla. 1st DCA 1982) in which a deputy was *392 found to have erred in accepting a claimant's testimony that she was not MMI in the face of overwhelming medical evidence to the contrary. Consequently, we reverse the deputy commissioner's determination that the claimant became TTD on December 15, 1980, because the medical evidence indicates that he had reached MMI. Although the doctors agree that the claimant had achieved MMI, there are conflicting factual inferences as to the exact date of MMI. Therefore, remand is necessary for the purpose of ascertaining the precise date of MMI.
In passing, we note that even if the claimant had prevailed in showing that he was not yet MMI, but was temporarily disabled, he would still fail to recover benefits. Without medical testimony that he was unable to work, he would have been required to conduct a search for employment, which he failed to do. Tallahassee Coca Cola Bottling Co. v. Parramore, 395 So.2d 275, 276 (Fla. 1st DCA 1981) (TTD);[2]Pompano Roofing Co., Inc. v. O'Neal, 410 So.2d 971 (Fla. 1st DCA 1982) (temporary partial disability). Since it is apparent that the claimant is no longer temporarily disabled, the award of remedial care must also be reversed. See Lake County Commissioners v. Walburn, 409 So.2d 153, 155 (Fla. 1st DCA 1982); Killebrew Manufacturing Co. v. Dawson, 401 So.2d 876, 877 (Fla. 1st DCA 1981).
The claimant also sought attorney's fees pursuant to Sections 440.34(2)(a), (b), (c), Florida Statutes (1979). The deputy commissioner did not rule on the possibility of a fee award based on the first and second sub-sections, because he found that a fee award was justified pursuant to Section 440.34(2)(c). This award stemmed from the e/c's controversion of the claimant's right to any benefits after September 2, 1980. However, the judicial gloss placed upon this particular statutory sub-section permits a claimant to recover fees, only if the e/c has paid no medical or disability benefits. Bill Watson's International Inn v. Claiborne, 409 So.2d 1208 (Fla. 1st DCA 1982); Four Quarters *393 Habitat, Inc. v. Miller, 405 So.2d 475 (Fla. 1st DCA 1981); Walt Disney World Co. v. May, 397 So.2d 1003 (Fla. 1st DCA 1981); Ardmore Farms, supra, at 270.
The e/c, having paid medical and temporary benefits until September 2, 1980, has obviously removed itself from the type of situation allowing the imposition of sanctions implicit in the award of Section 440.34(2)(c) fees. The fee award is reversed. However, we remand this case so that the deputy may address the issue of the propriety of a fee award based on Sections 440.34(2)(a), (b), and for the determination of the precise date of MMI. Our remand is without prejudice to the claimant's right to establish an entitlement to an award of permanent disability benefits.
Reversed and remanded for further consistent proceedings.
McCORD and JOANOS, JJ., concur.
NOTES
[1] Case authority suggests that when all the evidence on a particular point is in deposition form certain limited situations do permit an appellate tribunal to reweigh the evidence in the workers' compensation setting. See Kelly v. Florida Atlantic University, 413 So.2d 833 (Fla. 1st DCA 1982); Haga v. Clay Hyder Trucking Lines, 397 So.2d 428, 431 (Fla. 1st DCA 1981), rev. denied, 402 So.2d 609 (Fla. 1981); Morrison Merchandising Corp. v. Rambeau, 377 So.2d 234, 236 (Fla. 1st DCA 1979), cert. denied, 386 So.2d 640 (Fla. 1980).
[2] As a general rule for TTD purposes, bare complaints of pain will not excuse a search for employment, Lindsley Home Care Centers v. Fuster, 413 So.2d 810 (Fla. 1st DCA 1982), especially in the face of medical testimony as to a claimant's ability to work. Forming Contractors v. Barry, 413 So.2d 132 (Fla. 1st DCA 1982). Further, this case does not fall within the narrow situation excusing a work search noted in Square G. Construction, supra, at 399-400 at n. 4, wherein a claimant sought TTD benefits for a very limited six-week period without a medical opinion that he could not work. Claimant's comprehensive testimony was confirmed by the deputy who personally observed the claimant at the end of the period of requested benefits, and there was only one medical expert's testimony presented that was contrary to the claimant's testimony.

Square G. properly recognizes that lay testimony as to temporary medical or functional disability is competent evidence for a deputy to consider. See, e.g., Magic City Bottle & Supply Co. v. Robinson, 116 So.2d 240, 243-244 (Fla. 1959); 3 Larson, Workmen's Compensation § 79.52 (1976). This is because, as noted by Professor Larson in his treatise, supra, at § 79.53, lay testimony is of probative value in establishing matters such as the existence and location of pain, as well as the sequence of events leading to the compensable condition and the inability of a claimant to perform certain work. Accord, Decks, Inc. of Florida v. Wright, 389 So.2d 1074 (Fla. 1st DCA 1980). Further, deputy commissioners generally become expert in analyzing medical facts and lay testimony as to a compensable condition. Accord Magic City Bottle, supra, at 243. These considerations are particularly relevant to ascertaining the presence and degree of temporary disability, cf. Ardmore Farms, supra, at 270, because "disability is not a purely medical question: It is a hybrid quasi-medical concept, in which are commingled in many complex combinations the inability to perform, and the inability to get, suitable work." Larson, supra, § 79.53 at 15-271.
We point out that, as Professor Larson states and Square G. implicitly recognizes, as the period of claimed temporary disability lengthens, as the attendant medical facts become more complicated, when the deputy's personal observations of the claimant take place at a time other than during the claimed period of temporary disability, and as the number of medical experts testifying counter to the claimant's position (unsupported by medical opinion) grows, the value of lay testimony as to temporary or functional disability, or inability to work decreases. See generally, Larson, supra, at §§ 79.52-79.54.