523 So.2d 766 (1988)
REGAL MARINE INDUSTRIES and Employers Self Insurers Fund, Appellants,
v.
Thomas CAPPUCCI, Appellee.
No. 87-298.
District Court of Appeal of Florida, First District.
April 15, 1988.
Richard L. Baldy, of Joseph E. Smith, P.A., Orlando, for appellants.
Paul J. Morgan, of Simmerman & Morgan, P.A., Orlando, for appellee.
PER CURIAM.
The self-insured employer, Regal Marine Industries (Regal), appeals a workers' compensation order awarding the claimant, Thomas Cappucci, temporary partial disability benefits, determining his average weekly wage (AWW), and directing Regal to provide claimant with a nutrition, weight reduction and work hardening program. We reverse.
The deputy commissioner (deputy) directed Regal to furnish the various health programs despite the fact that neither the claim for benefits, application for hearing, notice of hearing, pretrial stipulation, nor the summary of issues discussed at the outset of the final hearing, made any mention of a claim for medical benefits or for nutrition, weight reduction or work hardening programs. Accordingly, the award of such benefits was in error. Sewell Plastics, Inc. v. Jackson, 418 So.2d 442 (Fla. 1st DCA 1982).
The self-insured employer also challenges the deputy's calculation of the claimant's average weekly wage (AWW) with regard to claimant's concurrent employment as a general maintenance man in *767 a mobile home park managed by his father. The only testimony presented on this question was that of claimant's father, who hired and supervised him in the mobile home park employment, but who was not claimant's actual employer. No pay records of the employer or income tax records were produced to establish claimant's earnings in this employment. Instead, claimant's father testified as to his recollection of claimant's hourly wage, starting date and hours worked. Inexplicably, claimant was never questioned as to this matter. Claimant's father acknowledged that he was not certain as to the precise amounts in question, but said, "I believe [claimant's weekly income] was $118 and change." When asked about the total amount paid his son in April, May and June before the accident, he said, "$905.62, I believe the office told me." All of this testimony was objected to as being hearsay and the deputy sustained the objection as to the $905.62 figure. When asked if it would be correct to say he really didn't know how much money his son earned during the period, the father replied, "I can only tell you what the office told me." The testimony of the father as to both the $118 per week and the $905.62 total figure was conflicting hearsay and does not constitute competent substantial evidence in support of the deputy's factual conclusion that the claimant earned $590.00 during the 13 weeks prior to the accident in his mobile home park employment. Paul H. Cowart/Building Specialty v. Cowart, 481 So.2d 83 (Fla. 1st DCA 1986).
There appears to be little reason why the father, as manager of one of the employer's parks, could not obtain company records to accurately determine the compensation paid the claimant. The only documentary evidence adduced was three check stubs, dated after claimant's industrial accident, which purportedly showed amounts paid to claimant for overtime he had accumulated prior to his injury. In addition to being dated after the injury, the stubs do not bear claimant's name or any indication of his rate of pay or the number of hours worked. They also contradict claimant's father's testimony that claimant usually worked 30 hours per week. Their probative value, if any, is minimal. Id. If claimant was able to obtain check stubs for the three overtime payments allegedly reflecting payments after the accident, surely he could have produced some sort of documentary evidence as to his earnings during the 13-week period prior to his accident.
The calculation of AWW is reversed, as is the award of nutrition, weight reduction and work hardening programs, and the case is remanded for further proceedings not inconsistent herewith.
REVERSED and REMANDED.
SHIVERS and JOANOS, JJ., concur.
THOMPSON, J., concurs specially.
THOMPSON, Judge, concurring specially.
I concur with the majority decision reversing both the calculation of the average weekly wage and the award of nuitrition, weight reduction and work hardening programs for the reasons stated therein. In addition, I would point out that the deputy erred in finding that the claimant had not reached maximum medical improvement (MMI) because this case has been remanded for further proceedings and the same erroneous ruling could result in another appeal and reversal.
All the medical evidence adduced established that claimant had attained maximum medical improvement (MMI) and was given a permanent impairment rating before the programs were considered and recommended. Permanent impairment is defined under the law as any anatomic or functional abnormality or loss, existing after the date of MMI, which results from the injury. § 440.02(16), Fla. Stat. (1985). The definition of the term "date of maximum medical improvement" was added to § 440.02 by a 1979 amendment, and since that date MMI has been defined as "the date after which further recovery from, or lasting improvement to, an injury or disease can no longer reasonably be anticipated, based upon reasonable medical probability." § 440.02(7), Fla. Stat. (emphasis added). In *768 accordance with the statute, MMI must be based upon reasonable medical probability and permanent impairment can exist only after the claimant has reached MMI.
Claimant's treating physician, Dr. Zilioli, testified that the claimant reached MMI on February 17, 1987 with a 5 percent permanent impairment of the body as a whole. Although the deputy recognized that the medical testimony established that the claimant had reached MMI and had sustained a permanent partial impairment ratable by the AMA guides, he found that claimant was entitled to further remedial treatment. A deputy cannot make a finding that a claimant has not reached MMI based on his opinion or on the testimony of the claimant if the only medical testimony is to the contrary. Sanlando Utility Corp. v. Morris, 418 So.2d 389 (Fla. 1st DCA 1982); Gilbarco, Inc. v. LeRoux, 411 So.2d 1031 (Fla. 1st DCA 1982); Ardmore Farms, Inc. v. Squires, 395 So.2d 268 (Fla. 1st DCA 1981). There are several Florida Supreme Court cases which have held that the opinions of medical experts are not conclusive, that such opinions may be disregarded by the deputy in favor of lay testimony, and that a deputy's conclusion may be based on the testimony of a claimant to the exclusion of that of a medical expert. See e.g. Hernandez v. De Carlo, 116 So.2d 429 (Fla. 1959); Magic City Bottle & Supply Company v. Robinson, 116 So.2d 240 (Fla. 1959); Star Fruit Co. v. Canady, 159 Fla. 488, 32 So.2d 2 (1947). However, all of these cases involved determinations of permanent disability, and are no longer applicable to such cases involving accidents occurring on or after August 1, 1979. Frank's Fine Meats v. Sherman, 443 So.2d 1055 (Fla. 1st DCA), petition for review denied, 451 So.2d 850 (Fla. 1984). The 1979 amendment to the statute relating to permanent disability now requires that the determination of the existence and degree of permanent impairment be based upon medically or scientifically demonstrable findings. Section 440.15(3)(a)(3), Fla. Stat.
This line of cases is also inapplicable to the determination of the date of MMI as pointed out by this court in Ardmore:
However, we view the question whether a claimant has reached MMI, i.e., the point after which lasting improvement is not anticipated and the point at which temporary disability ends and permanent disability begins, as essentially a medical question, the most persuasive evidence of which is expert testimony. A claimant's testimony may be considered on the question, but it cannot replace the treating physician's expert opinion as to when temporary disability ends and permanent disability begins. Ocala Jai-Ali, Inc. v. Johnson, IRC Order 2-3783 (April 24, 1979); Sunland Training Center v. Hicks, IRC Order 2-3443 (May 25, 1978) cert. denied 368 So.2d 1368 (Fla. 1979); see also Beasley & Son, Inc. v. Norris, 379 So.2d 1316 (Fla. 1st DCA 1980).
The question of when a claimant reaches MMI should not be confused with the question of a claimant's ability to return to work in some capacity, which is a mixed question involving both medical evidence and claimant's own testimony. On this issue the deputy commissioner may disregard expert opinion. See Crowell v. Messana, 180 So.2d 329 (Fla. 1965) and cases cited therein; Plantation Construction Co. v. Ayers, 385 So.2d 1138 (Fla. 1st DCA 1980) citing Magic City Bottle & Supply Co. v. Robinson, 116 So.2d 240 (Fla. 1959).
395 So.2d at 270. In addition, the cited supreme court cases are clearly not applicable in the determination of the date of MMI as a result of accidents and injuries occurring on or after August 1, 1979 in view of the 1979 amendment requiring that the determination of MMI be "based upon reasonable medical probability."