539 So.2d 1145 (1989)
HILLSBOROUGH COUNTY SCHOOL BOARD and Poe Risk Management Services, Appellants,
v.
Ora Mae FLITER, Appellee.
No. 88-1684.
District Court of Appeal of Florida, First District.
February 17, 1989.
Robert P. Byelick of Lyle & Skipper, Tampa, for appellants.
Dennis A. Palso of Frank Hamilton & Associates, Tampa, for appellee.
MINER, Judge.
In this workers' compensation case, the employer/carrier (e/c) appeal that portion of the order by the deputy commissioner (dc) which includes in computing claimant's average weekly wage (AWW) the e/c's past weekly contribution to her retirement program even though she is now retired and drawing retirement benefits. In her cross appeal, the claimant alleges that the dc erred by invoking the deemed earnings provision of section 440.15(3)(b)(2), Florida Statutes (1987), upon his finding that she voluntarily limited her income by opting for voluntary retirement and limiting her work search. We affirm the order of the dc as to each issue raised.
In a compensable accident on September 25, 1986, claimant, a 62 year old bus driver, injured her ankle and knee stepping off her school bus. Within three months after the *1146 accident her knee required arthroscopic surgery. On January 9, 1987, she returned to work but recurring knee problems prompted her to submit her resignation and request retirement benefits from the Florida Retirement System (FRS). Although her resignation was to be effective June 6, 1987, on May 14 she stopped working and thereafter did not return. She submitted requests for wage loss benefits which were controverted and on June 9, 1988, a hearing was held to resolve a dispute between the claimant and the e/c as to those benefits for the period August 12, 1987 to January 31, 1988. On June 10, 1988, the dc entered his order including the e/c's retirement contribution of $36.13 per week in claimant's AWW and finding that claimant had voluntarily retired and limited her work search. He also awarded wage loss benefits for the period in question based upon her deemed earnings of $160.00 per week. This appeal and cross appeal followed.
The parties agree and our research reveals that the issue raised on appeal is apparently one of first impression. The e/c argued that it would be inequitable and tantamount to double recovery if the $36.13 retirement contribution is added to claimant's AWW when she is already receiving over $540.00 per month in retirement benefits. They cite section 440.14(3), Florida Statutes, for the proposition that fringe benefits, including vested pension and retirement benefits, should not be included in AWW so long as the benefits continue to be provided. They maintain that the employer is continuing to provide the benefit through claimant's receipt of payments through the FRS.
Claimant argues that the above cited statutory provision requires that an employer continue providing identical benefits or, failing this, have the benefits included in her AWW. She asserts that retirement benefits paid by the FRS are not identical to the e/c's monthly contribution and thus she is but harvesting the fruits of a fringe benefit which is not the equivalent of the e/c's continuing to provide the benefit. She also points out that when she retired, the e/c stopped contributing to her retirement account.
It is well settled by case law and subsequent amendment of the statute that vested pension and retirement benefits are within the statutory definition of "wages." § 440.02(21), Fla. Stat., (1987); Buckhalter v. University of Florida, 411 So.2d 1327 (Fla. 1st DCA), pet. rev. denied, 418 So.2d 1278 (Fla. 1982). These benefits are also within the scope of section 440.14(3) in that they can be excluded from AWW to the extent that the e/c continues to provide them. Smith v. Sunland Training Center, 455 So.2d 1088, 1089 (Fla. 1st DCA 1984). Thus, the question at issue in the instant appeal is whether the e/c are in fact continuing to provide retirement benefits when claimant begins collecting from the FRS.
Claimant maintains that Smith v. Sunland Training Center, supra, supports her position even though this court approved excluding the e/c's retirement contribution from claimant's AWW because the e/c continued to provide retirement benefits to a claimant who was receiving retirement credits under Rule 22B-2.12, Florida Administrative Code during the time that claimant was on temporary total disability status. The cited rule gives full retirement credit to FRS members who return to active employment following a period during which they received workers' compensation benefits due to a compensable injury related to their FRS employment.
In Sunland, the court concluded:
[G]iven claimant's continuing eligibility to receive retroactive credit toward her retirement by virtue of Rule 22B-2.12, and considering her present temporary total disability status, that the employer is continuing to provide the benefit. Therefore, the employer may exclude the value of its contributions to retirement from the calculation of claimant's average weekly wage under section 440.14(3) so long as such consideration is provided... .
455 So.2d at 1090.
Claimant reasons that once her employment ended by retirement and the e/c stopped making contributions to her retirement *1147 account then the e/c are no longer able to exclude the benefit from AWW. In Sunland, exclusion was proper because the e/c continued contributing in accordance with Rule 22B-2.12. A fair reading of Sunland, she suggests, is that the court recognized that termination of employment and the resulting cessation of contributions would end the e/c's right to exclude the benefit from the AWW computation.
We agree with claimant and we reject the e/c's argument that double recovery is present here. In collecting benefits from FRS, claimant is only receiving that which she is entitled to receive by virtue of her past service and past e/c contributions. Once she retired, her receipt of benefits from FRS relieved the e/c of further financial sacrifice. Moreover, claimant gave up the added benefits she would have received had she continued her employment. Should the e/c argue that because claimant's retirement was voluntary she should not be rewarded with the $36.13 addition to AWW and its resultant increase in wage loss benefits, we would observe that such an argument is irrelevant to an AWW computation under section 440.14(3), but may have some application if we were dealing with wage loss under section 440.15(3)(b) and (2).
In sum, we hold that the benefit here in question was part of claimant's compensation package when she was employed and must be included in AWW to insure its provision in the future. We find the e/c's argument that they continue to provide the benefit in the form of FRS payments to be without merit. While the language of section 440.14(3) makes no specific provision for voluntary retirement, neither does it suggest that such a distinction as the e/c urge is in order.
Turning now to the issue raised in claimant's cross appeal, we find that competent, substantial evidence supports the dc's conclusion that claimant voluntarily limited her income by limiting her work search to part-time employment. At her deposition, claimant stated: "I haven't found anybody that wants you for 2 or 3 hours a day; and when you're 62 years old, they think twice I guess." At the hearing, claimant stated that she felt she could only work part-time and that part-time work was what she was looking for. However, she had been released for full-time light work. In the recent case of I.A.T.S.E. v. Nesselroad, 534 So.2d 709 (Fla. 1st DCA 1988), a claimant who was released for full-time light work was denied wage loss when he sought and took part-time work. The court again stated that a claimant is obligated to look for work within his physical limitations. 534 So.2d at 710.
Accordingly, the dc's order is herewith affirmed as to the issues raised on appeal and cross appeal.
BOOTH and JOANOS, JJ., concur.