WIGGINTON, Judge.
In this appeal, the employer/carrier challenge an award of temporary partial disability benefits. For the following reasons, we affirm.
Claimant injured her back on June 14, 1989. Although it was determined that she suffered from a herniated disc, claimant initially declined the indicated surgery. Nevertheless, claimant’s physician returned her to light duty as of December 15, 1989, with restrictions. As of January 11, 1990, the carrier ceased paying claimant benefits. Accordingly, she called her adjuster who informed her that she had been released to light duty work according to her doctor’s orders.
In mid-February, pursuant to the conversation with the adjuster, claimant found a job at the Breakers Hotel in housekeeping. She worked for one week but discontinued employment because of pain in her lower back.
As noted above, claimant had been advised by her treating physician shortly after her injury that surgery was indicated. However, fearful of the implications of surgery, claimant vacillated in her decision. Nevertheless, by January 1990, her symptoms of pain had steadily increased. Consequently, in March, following her unsuccessful attempt at work, claimant returned to her doctor and consented to surgery. In the meantime, although she did not produce any job lists at the hearing, claimant testified that she attempted to look for work within her restrictions but was unsuccessful.
Claimant ultimately scheduled surgery for May 7, 1990. The employer/carrier refused to pay claimant benefits until the date upon which surgery was finally performed, claiming she had voluntarily limited her income. Although the carrier maintained it had informed claimant by letter of January 12, 1990, that she was to perform a job search, and had enclosed work search forms, claimant insisted that she was not informed of her responsibilities in writing until she received a letter from the carrier dated June 29, 1990. However, she did admit she was informed by the adjuster during the January telephone conversation of her work search responsibilities and that she must fill out the forms, and in fact she did submit some job search forms to her attorney.
Pertinent to this appeal, a claim was made for temporary partial disability benefits specifically for the periods of January 11, 1990 through February 15, 1990; February 23, 1990 through April 8, 1990; and April 23, 1990 through May 6, 1990. Following a hearing, the judge of compensation claims entered an order indicating that he was unable to tell from the evidence submitted exactly what benefits the claimant had already received. He nonetheless found that claimant worked at the Breakers Hotel during the week of February 11-February 18, 1990. He also found that claimant had met her burden of proof with regard to a claim for TPD benefits from January 12, 1990 through May 6, 1990. He based his finding upon the medical testimony of claimant’s treating physician that she could return to work within certain restrictions during this time. He also observed that although it was true claimant was unsure as to whether or not to have surgery, it appeared from the uncontradicted testimony that she had a substantial injury which required surgery. Accordingly, he found no evidence showing that claimant voluntarily limited her income.
*629 The employer/carrier’s first point is that the JCC erred in awarding blanket compensation from January 12 through May 6, 1990. Since all parties agree that claimant is entitled only to the TPD benefits for the specific periods claimed, the order is corrected to that extent.
In their second point, the employer/carrier urge that claimant is not entitled to TPD benefits for lack of a conscientious work search. They argue that for the periods of TPD benefits claimed, there is no evidence of a medically justifiable excuse for claimant not to look for employment, and the mere fact of claimant’s need for surgery is not sufficient on which to base a conclusion that claimant had not voluntarily limited her income. We disagree.[1]
As a rule, “[wjhen an injured worker has recovered the ability to work but is not yet MMI, he is entitled to TPD benefits but only as established by a conscientious work search or a medical excuse therefore.” Ringling Brothers Barnum and Bailey Circus v. O’Blocki, 496 So.2d 947 (Fla. 1st DCA 1986). In the instant case, claimant was released by her physician to return to work. Indeed, it was her doctor’s opinion that there was no reason why claimant could not work within stated restrictions up to the point of surgery. In that respect, for temporary disability purposes, bare complaints of pain generally will not excuse a work search in the face of medical testimony as to a claimant’s ability to work. Sanlando Utility Corp. v. Morris, 418 So.2d 389 (Fla. 1st DCA 1982). Nevertheless, Florida’s workers’ compensation law has always recognized that the JCC is not in every case constrained by the testimony of a medical expert and may in certain cases disregard that testimony in favor of lay testimony. See Square G. Construction Company v. Grace, 412 So.2d 397 (Fla. 1st DCA 1982), quoting from Crowell v. Messana Contractors, 180 So.2d 329, at 330 (Fla.1965). In Square G., the court made it clear that with respect to a claimant who may testify that pain and immobility prevented work, in conflict with a physician’s opinion that the claimant was physically able to work, the trier of fact has a right to accept the opinion of the physician or to reject it, and to base his conclusions on the testimony of the claimant. In so holding, the court was careful to distinguish those decisions rejecting a claimant’s bare complaints of pain as insufficient to excuse the lack of a work effort.
The Square G. decision was later closely analyzed in Sanlando Utility Corp. v. Morris, and characterized as presenting a “narrow situation excusing a work search ... wherein a claimant sought TTD benefits for a very limited six-week period without a medical opinion that he could not work.” 418 So.2d at 392, n. 2. Further, this court noted that the claimant’s testimony in Square G. was “confirmed by the deputy who personally observed the claimant at the end of the period of requested benefits, and there was only one medical expert’s testimony presented that was contrary to the claimant’s testimony.” Id. However, the opinion went on to make the following observations which are particularly pertinent here and worthy of emphasis:
Square G. properly recognizes that lay testimony as to temporary medical or functional disability is competent evidence for a deputy to consider. See, e.g., Magic City Bottle & Supply Co. v. Robinson, 116 So.2d 240, 243-244 (Fla.1959); 3 Larson, Workmen’s Compensation § 79.52 (1976). This is because, as noted by Professor Larson in his treatise, supra, at § 79.53, lay testimony is of probative value in establishing matters such as the existence and location of pain, as well as the sequence of events leading to the compensable condition and the inability of a claimant to perform certain work. Accord, Decks, Inc. of Florida v. Wright, 389 So.2d 1074 (Fla. 1st DCA 1980). Further, deputy commissioners generally become expert in analyzing *630 medical facts and lay testimony as to a compensable condition. Accord Magic City Bottle, supra, at 243. These considerations are particularly relevant to ascertaining the presence and degree of temporary disability, cf. Ardmore Farms [v. Squires], supra [395 So.2d 268], at 270 [(Fla. 1st DCA 1981)], because “disability is not a purely medical question: It is a hybrid quasi-medical concept, in which are commingled in many complex combinations the inability to perform, and the inability to get, suitable work.” Larson, supra, § 79.53 at 15-271.
We point out that, as Professor Larson states and Square G. implicitly recognizes, as the period of claimed temporary disability lengthens, as the attendant medical facts become more complicated, when the deputy’s personal observations of the claimant take place at a time other than during the claimed period of temporary disability, and as the number of medical experts testifying counter to the claimant’s position (unsupported by medical opinion) grows, the value of lay testimony as to temporary or functional disability, or inability to work decreases. See generally, Larson, supra, at §§ 79.52-79.54.

Id.

Although in the instant case the JCC did not observe claimant at the end of the period of claimed benefits, the period of claimed temporary disability was nonetheless limited, and, at the end of that period, claimant in fact underwent major surgery for her back, lending credence to her testimony that she was unable to perform the job at the Breakers due to pain. Moreover, the instant case does not present a situation wherein for a period of time after a claimant’s release to work, there is no evidence that she sought either further medical attention or return to employment. To the contrary, claimant obtained employment, determined that due to increasing pain she was unable to continue employment, sought medical attention for that pain, and, because of the pain, ultimately underwent the surgery she had hitherto been avoiding.
Consequently, given the above circumstances, we are persuaded to defer to the JCC’s analysis here of the medical facts and lay testimony. We conclude that his finding that claimant had not voluntarily limited her income is based on competent and substantial evidence and amounts to a tacit excusal of claimant’s responsibility to search for employment.
The order appealed is accordingly AFFIRMED with the necessary caveat that claimant is entitled to temporary partial disability benefits only for those specific periods claimed.
ERVIN, J., and CAWTHON, Senior Judge, concur.

. Although claimant argues that a work search should be excused due to the employer/carrier's failure to inform her of her responsibilities for said work search, it is clear from the record that claimant received this information by oral notification and was clearly on notice of her responsibility to conduct a search.