WOLF, Judge.
The employer and servicing agent (E/SA) appeal from a final order of the judge of compensation claims (JCC) awarding certain compensation benefits to Laura White (claimant). The E/SA asserts, among other things, that (1) the JCC erred in awarding temporary partial disability (TPD) benefits; (2) the JCC erred in establishing the date of maximum medical improvement; and (3) the JCC erred in awarding TPD from August 15, 1989.
Appellee concedes that the JCC incorrectly set the date of maximum medical improvement (MMI), and that claimant had previously received benefits through August 16, 1989. The final order should, therefore, be amended to reflect an MMI date of November 14, 1989, and to show that any benefits awarded should begin on August 17, 1989, rather than August 15, 1989. In light of the agreement between the parties, it is unnecessary for us to further discuss these issues. As to the first issue, we determine that there are insufficient factual findings to support the award of TPD and wage-loss benefits during the disputed period. We, therefore, reverse the order of the JCC and remand the case for further consideration.
The E/SA challenges the claimant’s entitlement to benefits for the periods of August 17, 1989, through September 23, 1989 (when she was not working), and September 24, 1989, through the date of the hearing (when the claimant was employed part time as a cashier).
Claimant was working at Clairson on April 26, 1989, when she injured her neck and shoulder while lifting brackets. After her injury, the claimant continued working at Clairson until August 17, 1989. During this period claimant made hooks, loaded boxes, attached labels, sorted hooks, and scrubbed rust off boxes. The E/SA asserts that work given to the claimant was light-duty work which was within her medical restrictions. Claimant asserts that there were insufficient duties which did not aggravate her condition and that she was required to work outside her restrictions. The JCC found that the light-duty work given to the claimant caused the pain in her neck and right shoulder to flare up. Claimant voluntarily left employment with Clair-son on August 17, 1989. She left because, in her own opinion, “no work” would help her recover faster than light-duty work.
Dr. Webb, claimant’s treating physician, restricted claimant from repetitive movement of her neck and right shoulder and from lifting over 20 pounds.[1] The doctor was asked whether there was any limitation on the number of hours that claimant could work. He responded as follows:
Assuming that she is given the opportunity to adjust her position, to move her neck freely in various locations and to not be in a position of static neck positioning I don’t anticipate any limitations on the hours.
Q Okay. Did you prescribe any limitations in the hours that she was able to work on her part time job.
A No.
He never gave an opinion that claimant would heal faster if she did not work.
The claimant did not work from August 17, 1989, through September 23, 1989. She did not perform a job search during that period, but rather checked for jobs with friends when she “ran into them.” Claimant asserted that she was hurting too much to be looking and did not search for employment. While the JCC awarded benefits for this period, he made no factual findings concerning claimant’s ability to work or the sufficiency of the job search during this period. There is no medical testimony *472 which would support claimant’s inability to work during this period.
On September 23, 1989, claimant began working for Martin Oil. She was working 24 to 30 hours a week as a cashier which is a light-duty position. The opportunity to work 40 hours a week is available to the claimant. Claimant asserts that she is working all the hours she can. She stated that working seven to eight-hour days causes her neck to flare up. The JCC awarded benefits from September 23 through the date of the hearing.[2]
The JCC made one factual finding concerning the claimant’s ability to work during this period. The order stated, “The claimant testified that her present job is the most that she is able to do physically and that her present employer is understanding when the claimant needs to take time off to see her doctors for treatment.” The order is silent as to why he accepted this testimony and rejected the contradictory testimony of the treating physician.
To establish eligibility for TPD benefits, a claimant has the initial burden of presenting evidence of a change in his employment status due to the compensable injury. Edwards v. Caulfield, 560 So.2d 364, 374 (Fla. 1st DCA 1990); see also Waterman v. Interstate Truckers, Inc., 545 So.2d 408 (Fla. 1st DCA 1989) (reasoning regarding wage loss equally applicable to TPD). A claimant may satisfy this initial burden by presenting evidence of (1) a good-faith work search, or (2) obtaining and performing a full-time job. See Waterman, supra at 409 and cases cited therein.
The confusion in the case law in this area has generally arisen when a claimant has attempted to meet the initial burden by alternative means. One such means is presentation of competent evidence of medical problems which will excuse the necessity for a work search. Lakeside Health Care v. Fox, 584 So.2d 627 (Fla. 1st DCA 1991). The major issue which has arisen concerns the sufficiency or competency of the evidence presented, especially when it is not supported by or contradicts medical testimony. Lakeside Health Care, supra.
The other area of confusion arises when a claimant obtains part-time employment. The general rule is that evidence of part-time employment alone is insufficient to meet the claimant’s initial burden. I.A.T.S.E. v. Nesselroad, 534 So.2d 709 (Fla. 1st DCA 1988); Sharp Constr. Co. v. Perez, 429 So.2d 367 (Fla. 1st DCA 1983); Vantage Pointe v. Sowers, 463 So.2d 396 (Fla. 1st DCA 1985). Some of the confusion concerning part-time employment is because the issue also arises after the claimant has met the initial burden in the context of determining the applicability of deemed earnings. Hillsborough County School Bd. v. Fliter, 539 So.2d 1145 (Fla. 1st DCA 1989); Albertson’s, Inc. v. Natale, 555 So.2d 946 (Fla. 1st DCA 1990). The rule in those cases where the claimant has met the initial burden is that the carrier has the burden to establish that the claimant is voluntarily limiting his income by obtaining part-time employment. Myers v. Holiday House, 578 So.2d 349 (Fla. 1st DCA 1991); Walker v. Heavy Machinery Tool and Transporters, Inc., 576 So.2d 1363 (Fla. 1st DCA 1991). In order to meet the initial burden, however, the claimant must present competent evidence of medical restrictions which would limit him to part-time employment. I.A.T.S.E., supra. The issue in this case concerns the sufficiency of that evidence.
The entitlement to benefits generally is a question of fact for the JCC to determine from the totality of the circumstances. Meek v. Layne-Western Co., 566 So.2d 31 (Fla. 1st DCA 1990). The JCC’s decision, however, to grant PTD must be based on competent substantial evidence and factual findings which will support the conclusion. Burger King v. Nicholas, 580 So.2d 656 (Fla. 1st DCA 1991); Purolator Courier Corp. v. Hess, 412 So.2d 897 (Fla. 1st DCA 1982).
Generally, subjective but medically unverified testimony standing alone is insufficient to support the award of TPD *473 benefits. Burger King, supra; Sanlando Utility Corp. v. Morris, 418 So.2d 389 (Fla. 1st DCA 1982). This is especially true when there are no circumstances other than the claimant’s complaints of pain which would excuse the lack of a work effort. Lakeside Health Care, supra. The JCC may award benefits, however, where additional circumstances support the claimant’s assertion of inability to work full time. See, e.g., Lakeside Health Care, supra (claim of benefits for a short period of time followed immediately by major surgery); Square G. Constr. Co. v. Grace, 412 So.2d 397 (Fla. 1st DCA 1982) (claim of benefits for a short period of time and observation of claimant by deputy who saw claimant at the end of a period of requested benefits). These situations, however, are limited in nature, and the reasons for accepting claimant’s testimony while rejecting medical testimony must be given. Un-controverted medical testimony cannot be rejected without explanation. Thomas v. Salvation Army, 562 So.2d 746 (Fla. 1st DCA 1990).
In the instant case, uncontroverted medical testimony indicated that claimant could work in a full-time position with certain restrictions during the period from August 17, 1989, through the date of the hearing. The JCC’s order totally fails to address the claimant’s failure to work or conduct a job search during August and September, 1989. In addition, there is no indication in the order as to why the JCC rejected the medical testimony concerning the lack of medical limitations on claimant’s working hours from September, 1989, through the date of the hearing. We, therefore, find the order as presently written to be insufficient to support the award of benefits for the disputed period.
We reverse and remand for the JCC to make further factual determinations concerning the claimant’s entitlement to benefits, or to enter an order consistent with this opinion.
WIGGINTON, J., concurs.
ALLEN, J., concurs in part and dissents in part with written opinion.

. During one period of time, the weight restriction was only 10 pounds. It is unclear from the testimony how long this restriction lasted.

. Based on the corrected MMI date, TPD benefits would be available through November 14, 1989, at which time claimant would be entitled to wage-loss benefits.