116 So.2d 240 (1959)
MAGIC CITY BOTTLE & SUPPLY COMPANY and Great American Indemnity Company, Petitioners,
v.
George ROBINSON and the Florida Industrial Commission, Respondents.
Supreme Court of Florida.
December 9, 1959.
*241 Dixon, DeJarnette, Bradford, Williams, McKay & Kimbrell and Paul A. Carlson, Miami, for petitioners.
Allen Clements, Miami, for George Robinson and Paul E. Speh, Tallahassee, for Florida Industrial Commission, respondents.
DREW, Justice.
This cause is before the Court on certiorari to review the order of the Florida Industrial Commission affirming the order of the deputy commissioner awarding the administratrix of the deceased employee permanent partial disability benefits amounting to 35% of the left leg.
The determining question is the legal sufficiency of the evidence to support the findings of the deputy commissioner.
Claimant was injured during the course of his employment when a piece of machinery struck his left leg breaking two bones near the ankle joint. He received temporary total disability compensation until October 18, 1957, at which time he was discharged by the treating physician as having reached maximum recovery with a 5% permanent partial disability of the left leg. A claim was later filed by the claimant demanding further compensation benefits.
At the final hearing before the deputy commissioner five witnesses testified. These witnesses were the claimant, his wife, Dr. Manson, Mr. Maby, who was the *242 carrier's representative, and Mr. DuBray, who was the investigator for the carrier. The claimant had also been examined by Dr. Claude Holmes but this doctor was not called to testify at the hearing. The record indicates that Dr. Holmes, as well as Dr. Manson, the treating physician, assigned a permanent partial disability rating of 5% of the left leg.
Because the deputy commissioner's order under review is of such a nature in the instant case as would make pertinent portions material to the discussion which follows, we quote verbatim paragraphs 5, 6 and 7 thereof in the footnote.[1] The subsequent demise of the claimant was caused by other causes than those in which we are interested here.
Petitioner argues there is a lack of competent substantial evidence in the record to support the deputy commissioner's finding of 35% loss of use of the left leg, and that the award was contrary to the intent of the law. With neither contention can we agree.
Deputy commissioners determine all the issues in all contested workmen's compensation cases.[2] The issue in the instant case was the exact degree of disability under F.S. § 440.15(3) (s), F.S.A.:
"(s) Partial loss or partial loss of use: Compensation for permanent partial loss or loss of use of a member may be for proportionate loss or loss of use of the member."
Section 440.25(3) (c), Florida Statutes, F.S.A., requires a deputy commissioner to include in his order a statement of the findings of fact and other matters pertinent to the questions at issue. When these findings are supported by competent substantial evidence of an adequate nature, the order of the deputy commissioner will not be disturbed.[3] On the other hand, if the findings of the deputy commissioner *243 do not show that he has considered all of the pertinent evidence presented before him, or that the findings are inadequate or unsupported by evidence of a competent substantial nature, the order will not be allowed to stand. The order should show the deputy commissioner has considered all the evidence even though he has not recited it in detail.[4]
This Court has held on many occasions that the opinions of medical experts are not in and of themselves conclusive in matters of this kind,[5] and in some cases the deputy commissioner may disregard the opinion of the expert and give greater weight to the lay testimony of demonstrative evidence presented to him. Larson has gone so far as to indicate that it is necessary to "dispel the misconception that valid awards can stand only if accompanied by a definite medical diagnosis."[6] Moreover, Larson further states "if the circumstances themselves are persuasive enough, a conclusion supported by no medical testimony may stand in defiance of medical testimony to the contrary."[7] In arriving at this rule, two underlying reasons may be discerned: the first is that lay testimony, including that of the claimant himself, is of probative value in establishing such simple matters as the existence and location of pain, the sequence of events leading to the compensable condition, and the actual ability or inability of the claimant to perform his work. Secondly, industrial commissions generally become expert in analyzing certain uncomplicated kinds of medical facts, particularly those bearing on industrial causation, disability, malingering and the like.[8]
There is some intimation that the petitioner considers that because the injury was a scheduled one, the legislature did not historically have in mind the economic factors involved when a permanent partial disability was to arise under this section. Nothing could be less accurate. The underlying principle of compensation law  all compensation law  is that benefits relate to loss of earning capacity and not to physical injury as such.[9] In scheduled benefits the basic theory remains the same; the only difference is that the effect on earning capacity is a conclusively presumed one, based on observed probabilities in many similar cases, instead of a specifically proved one, based on the individual's actual wage-loss experience. Larson indicates the effect must necessarily be a presumed one, since it would be obviously unfair to appraise the impact of a permanent injury on earning capacity by looking at claimant's earning record for some relatively short period preceding the hearing. To avoid this impossible administrative task, the apparently cold blooded system of putting average price tags on arms, legs, eyes and fingers has been devised.[10]
*244 It is the responsibility of the deputy commissioner to evaluate all the testimony. In the evaluation process he may, if it appears appropriate, give greater weight to lay testimony  including that of the claimant  or physical evidence presented than to expert medical evidence. This is especially true in those cases where the deputy commissioner has the opportunity to see and examine the claimant as was done in this case. We find from this record that the deputy commissioner considered the medical evidence, the lay testimony and the physical evidence and correctly arrived at the conclusion he did.
Certiorari denied.
THOMAS, C.J., and TERRELL, ROBERTS and HOBSON, JJ., concur.
NOTES
[1] "5. That 17 months after the accident Robinson's injured leg was swollen; that 17 months after the accident Robinson's left ankle was swollen; that Robinson could not run because of his injured left leg; that Robinson could not do heavy lifting because of his injured left leg; that Robinson would, at times, get a catch in his left knee when walking up steps; that Robinson could not do much walking because of his injured left leg; that Robinson had osteoporosis  thinning of the bone  in his left leg due to the accidental injury; that the circulation of blood in Robinson's left leg had been impaired by the accidental injury; that standing on his left injured foot caused the swelling of Robinson's left leg to increase; that the swelling in varying degrees of Robinson's left ankle and leg was permanent; that the use of Robinson's left leg was very much limited and permanently restricted by the injury; that Robinson suffered pain in his injured left leg after using it in working during the day; that Robinson suffered loss of strength in his injured leg as the result of the injury; that the endurance of Robinson's left leg was reduced considerably by the said accidental injury; that the quickness of action of Robinson's left leg was very much reduced by the injury; that as a result of said accident Robinson lost some coordination of movements of his left leg; and that Robinson could not do many things after reaching maximum degree of recovery that he was able to do before the accident.

"6. That George Robinson reached maximum medical recovery on October 19, 1957 with a resultant permanent partial disability of 35% loss of use of left leg, entitling him to workmen's compensation for 70 weeks commencing as of October 19, 1957 at the rate of $32.33 per week.
"7. That in determining the facts in this case, the undersigned considered and reconsidered the testimony of George Robinson, Frances Robinson, Robert DuBray, Reginald Maby and Dr. P.J. Manson, and considered carrier's Exhibit No. 1. That the undersigned Deputy Commissioner, in determining the facts set forth herein, also considered the injured left leg and ankle of George Robinson, which the undersigned Deputy Commissioner examined very closely. That it appeared to the undersigned Deputy Commissioner and he so finds that George Robinson had sustained a permanent loss of use of his injured left leg in excess of one-third of normal use."
[2] United States Cas. Co. v. Md. Cas. Co., Fla. 1951, 55 So.2d 741.
[3] United States Cas. Co. v. Md. Cas. Co., supra.
[4] Hardy v. City of Tarpon Springs, Fla. 1955, 81 So.2d 503; Straehla v. Bendix-We-Launder-Rite, Fla. 1955, 81 So.2d 657.
[5] Andrews v. Strecker Body Builders, Fla. 1957, 92 So.2d 521, 523; Star Fruit Co. v. Canady, 159 Fla. 488, 32 So.2d 2; Johnson v. Dicks, Fla. 1954, 76 So.2d 657; Rule also applied in jury cases in the evaluation of the opinions of experts: Gulf Life Ins. Co. v. Shelton, 155 Fla. 586, 21 So.2d 39.
[6] 2 Larson, Workmen's Compensation Law, Sec. 79.51, p. 299.
[7] Op. cit.. Sec. 79.52, pp. 301, 302.
[8] Op. cit., Sec. 79.53, pp. 302, 303. Mr. Justice Chapman in Star Fruit Co. v. Canady, 1947, 159 Fla. 488, 32 So.2d 2, 4, quoted with approval in Florence Citrus Growers Ass'n v. Parrish, 1948, 160 Fla. 685, 36 So.2d 369, 370:

"`We find no testimony in the record contradictory of the testimony of the claimant on the point of his permanent disability other than the opinion of the doctor to the effect that Canady was physically able to work after sustaining the injury in 1946. The Circuit Judge had a right, as a matter of law, to accept the opinion of the Tampa physician on this point or to reject it and base his conclusions on the testimony of the claimant Canady * * *.'"
[9] Larson, supra. p. 42.
[10] Ibid.