417 So.2d 1159 (1982)
FRANKLIN MANOR APARTMENTS and Liberty Mutual Insurance Company, Appellants,
v.
Timothy J. JORDAN, Appellee.
No. AH-379.
District Court of Appeal of Florida, First District.
August 13, 1982.
*1160 Keith A. Mann, Dickinson, O'Riorden, Gibbons, Quale, Shields & Carlton, Sarasota, for appellants.
Alex P. Lancaster, Sarasota, for appellee.
LARRY G. SMITH, Judge.
This is an appeal from an order awarding claimant temporary total disability benefits and remedial psychiatric care. We reverse the award of all benefits to claimant as the record conclusively shows that the aggravation of claimant's psychiatric condition is not causally related to his industrial injury.
Claimant began having trouble with his right elbow in 1972. Finally, Dr. Hatt, an orthopedist, recommended surgery in 1978. However, because claimant was exhibiting a psychiatric disturbance, Dr. Hatt had claimant see Dr. Slocum, a psychiatrist, before doing surgery. The psychiatric evaluation revealed that claimant used his elbow as an excuse when he could not do things as quickly or as thoroughly as someone else. Because of this, Dr. Slocum felt that claimant's concept of himself might suffer if his elbow was repaired and he could no longer use it as an excuse. After learning this, Dr. Hatt declined to perform surgery on claimant's elbow.
On June 4, 1979, claimant fell at work and injured his right elbow. He was treated by Dr. Kauffman, an orthopedic surgeon. While under Dr. Kauffman's care, claimant focused an excessive amount of attention on his elbow and related many imaginary symptoms to the doctor. Although he felt that claimant had only sustained bruises and contusions to his elbow as a result of his industrial accident, Dr. Kauffman undertook, at claimant's vehement insistence, the surgical repair of the elbow, but only did so after receiving a second opinion about the matter. Neither Dr. Kauffman, nor the carrier who authorized the surgery knew about claimant's prior medical and psychiatric history.[1] The surgery did not disclose any profound damage to the elbow and claimant was left without any significant permanent anatomic disability. However, the deputy commissioner, relying on Dr. Slocum's testimony concerning claimant's post-accident psychiatric condition, determined that claimant had, as earlier predicted, suffered an aggravation or acceleration of his preexisting psychiatric disability as a direct and proximate result of the surgery to his elbow. Consequently, he awarded claimant temporary total disability benefits and remedial psychiatric care.
*1161 It has long been the law in this state that for post-traumatic neurosis to be compensable, it must be the direct and immediate result of the industrial injury and not merely remotely connected with the injury. Superior Mill Work v. Gabel, 89 So.2d 794, 795 (Fla. 1956). In Gabel, the claimant suffered from varicose veins in both legs. He had had thrombophlebitis in his left leg in 1950 for which he had been hospitalized. In 1953 he suffered an industrial injury to his right leg which resulted in thrombophlebitis in his right leg and a pulmonary embolism. He again suffered thrombophlebitis in his right leg in 1954 which was corrected by a ligation of the saphenous vein to avert a pulmonary embolus from developing. The claimant developed a fear that if he resumed his usual employment he would develop thrombophlebitis in his left leg and another pulmonary embolus and he sought compensability for this anxiety neurosis. The Supreme Court reversed the award of compensability reasoning that claimant's anxiety neurosis was too remote from his industrial injury. In so holding, the court pointed out that the medical evidence was not clear, and the deputy commissioner did not specifically find, that the second episode of thrombophlebitis (1954) in his right leg was the result of the 1953 industrial accident. The court also reasoned that claimant's industrial injury could not possibly have resulted in the thing feared (a pulmonary embolus) because the saphenous ligation performed in 1954 would prevent a pulmonary embolus from developing as a result of a blood clot in the claimant's right leg.
Here, the aggravation of claimant's psychiatric condition is the direct and proximate result of surgery which was performed to correct a condition that preexisted claimant's industrial injury. The bruises and contusions suffered by claimant in his industrial accident did not necessitate the surgery. The doctor who treated claimant for these bruises and contusions did not feel that surgery was required and only relented when claimant insisted his elbow be surgically repaired. Under the circumstances, the aggravation of claimant's psychiatric condition is only incidentally related to his industrial injury and the finding of compensability must be
REVERSED.
JOANOS and THOMPSON, JJ., concur.
NOTES
[1] The carrier's claims supervisor testified at the hearing held before the deputy that the company would not have authorized Dr. Kauffman to perform surgery if it had known about claimant's previous medical history. We do not view this lack of knowledge as significant under the circumstances of this case.