451 So.2d 957 (1984)
Edwin ALLMAN, Jr., Appellant,
v.
MEREDITH CORPORATION and Maryland Casualty Company, Appellees.
No. AT-457.
District Court of Appeal of Florida, First District.
June 12, 1984.
David M. Hammond, Orlando, for appellant.
Wendell J. Kiser and Marshall S. Adler of Zimmerman, Shuffield, Kiser & Sutcliffe, Orlando, for appellees.
SHIVERS, Judge.
In this workers' compensation case, claimant, Edwin Allman, Jr., appeals the order of the deputy commissioner which denied his claims for temporary total disability and medical benefits. Claimant raises five points on appeal. We reverse the deputy's findings as to all five points, since these points are interrelated.
Claimant injured his neck in a compensable accident on August 21, 1975. In August of 1977, claimant had an anterior cervical *958 fusion performed at the C5-6 vertebra level by Dr. Donald L. Ames in Vero Beach, Florida. Thereafter, claimant returned to work for a short period of time, but due to the pain he was experiencing, discontinued his employment. In July of 1978, a myelogram was performed on claimant under the direction of Dr. Ames at Indian Rivers Hospital. This myelogram revealed a small cervical bar at the C6-7 vertebra level. The myelogram also revealed the spinal fusion performed earlier by Dr. Ames at the C5-6 vertebra level.
After the performance of the myelogram at Indian Rivers Hospital, claimant moved to New Jersey to be near his immediate family. In March of 1979, claimant first met with a Dr. Clement H. Kreider, Jr., a neurosurgeon, who became claimant's primary treating physician thereafter. Subsequently, on August 9, 1979, a hearing was held before the deputy commissioner sub judice on, among other matters, claimant's claim of diminution of his wage earning capacity in excess of the 20% permanent partial disability previously accepted by the carrier. After the same, the deputy entered an order on September 10, 1979, which, inter alia, reserved ruling and retained jurisdiction on the issues of whether claimant was entitled to any temporary total disability benefits, permanent partial disability benefits, or permanent total disability benefits. These issues were to be resolved pending receipt of additional medical testimony.
In February of 1982, claimant and the employer/carrier entered into a joint stipulation that claimant be paid the sum of $6,000 as a full settlement of any claim that claimant might have for back due compensation benefits up to February 23, 1982. The stipulation further provided that claimant was to enter the hospital under the care of a Dr. Montoya for a myelogram. This stipulation was approved by the deputy commissioner.
Dr. Montoya performed a second myelogram on claimant on February 23, 1982. This myelogram revealed the presence of spondylosis and degenerative disc disease at the C6-7 vertebra level. Although Dr. Montoya did not opine as to the causal relationship between claimant's disc disease and his accident, he did opine that claimant's disability was in the neighborhood of 25% considering claimant's ankylosis at the C5-6 vertebra level (the location of claimant's previous surgery) and claimant's degenerative disc disease at the C6-7 vertebra level. Dr. Montoya also opined that claimant had reached maximum medical improvement and that he could return to light work.
On October 4, 1982, claimant underwent his third myelogram, this one by Dr. Kreider. This myelogram again revealed problems at the C6-7 vertebra level, i.e., a herniated intervertebral disc at C6-7. Dr. Kreider thereafter performed an anterior cervical fusion on claimant at the C6-7 vertebra level on October 18, 1982. Pursuant to deposition, Dr. Kreider opined that claimant's herniated disc at the C6-7 vertebra level, and the resulting surgery, were causally related to claimant's industrial accident within a reasonable degree of medical probability. Dr. Kreider based his opinion on his examination of the myelogram performed by Dr. Ames in 1978, his subsequent treatment of claimant, the physical and radiologic findings adduced from examinations of claimant, including the changes in the radiologic findings over a period of time, and the history given to Dr. Kreider by claimant of claimant's condition and how claimant progressed throughout the years.
On March 11, 1983, claimant's attorney filed an application for hearing requesting a hearing on temporary total disability benefits from February 19, 1982, to date and prospectively, payment of remedial care and attention, prescriptions, mileage reimbursement, penalties, interest, attorney's fees and costs. The deputy commissioner's notice of hearing set forth the same matters for hearing as outlined in claimant's application for hearing. At the hearing, claimant testified that he had not worked since 1978 and that since February of 1982 he had spent his time staying at home or *959 visiting with his sister. The employer/carrier refuted claimant's testimony by showing films of claimant engaging in construction work for his brother-in-law's company in May of 1982 and May of 1983. These films showed claimant working construction without any signs of disability. Based on the foregoing, the deputy commissioner entered an order finding, inter alia: (i) that claimant reached maximum medical improvement on June 12, 1980, with a 25% permanent partial disability of the body as a whole as a result of claimant's accident in 1975; (ii) that claimant failed to demonstrate a loss of wage earning capacity in excess of this 25% permanent partial disability rating; and, (iii) that claimant's continuing complaints and need for medical care were no longer causally related to his accident. As to this latter finding, the deputy specifically rejected the testimony of Dr. Kreider to the contrary, finding that Dr. Kreider had a total lack of understanding as to claimant's true physical abilities and activities in 1982.
Claimant's first point raised on appeal is that the deputy commissioner erred in ruling on claimant's loss of wage earning capacity in excess of the 25% disability rating assigned by the deputy, since this issue was not properly noticed for hearing. We agree. Here, the application for hearing, the notice of hearing, and the pretrial stipulation all stated that the subject of the hearing below was claimant's entitlement to temporary total disability benefits, the payment of remedial care and attention, mileage reimbursement, interest, penalties, attorney's fees and costs. At hearing, claimant's counsel reiterated that these issues were the subject of the hearing and at no point during the hearing did the deputy commissioner state or indicate, nor did the respective parties state or indicate, that claimant's loss of wage earning capacity was to be adjudicated. Although we recognize that issues "properly presented and ripe for adjudication" should be adjudicated, see Washington Square Associates, Ltd. v. Bourne, 408 So.2d 809, 810 (Fla. 1st DCA 1982) (emphasis added), it is also well established that notice must be given as to the issues in dispute to adequately apprise the deputy and the respective parties of the issues the deputy is to hear and determine. See, e.g., United States Steel Corp. v. Green, 353 So.2d 86 (Fla. 1977); Diplomat Hotel v. Grimes, 379 So.2d 1025 (Fla. 1st DCA 1980), cert. denied, 388 So.2d 1112 (Fla. 1980). If the law as articulated in these latter two cases was otherwise, a party could present evidence, as in the instant case, without the knowledge that such evidence would have a bearing on issues that the deputy commissioner might subsequently decide were ripe for adjudication. Further, a party (again as in the instant case) would be effectively prevented from presenting rebuttal or additional evidence on such issues. Accordingly, we find and hold that the deputy commissioner erred in ruling on claimant's loss of wage earning capacity and direct the deputy upon remand to strike those portions of the order not addressing the issues as framed in the notice of hearing.[1]
Claimant's next point raised on appeal is that the deputy commissioner erred in finding that claimant's continuing complaints and need for medical care are no longer causally related to the industrial accident occurring in August of 1975. Again, we agree with claimant. Sub judice, the only medical testimony before the deputy as to the causal relationship between claimant's accident and claimant's abnormal disc condition at the C6-7 vertebra level, and Dr. Kreider's resulting surgery, was Dr. Kreider's deposition testimony taken on October 1, 1981, and on February *960 17, 1983. In both such depositions, Dr. Kreider opined, within a reasonable degree of medical probability, that claimant's accident was the cause of claimant's abnormal condition at the C6-7 vertebra. Significantly, no other testimony was introduced at the hearing to refute Dr. Kreider's opinion. To the contrary, it is noteworthy that the deputy found that claimant had a 25% permanent partial impairment. This disability rating presumptively was founded on Dr. Montoya's opinion that claimant had a disability of 25% based on claimant's anklyosis at the C5-6 vertebra level and claimant's degenerative disc disease at the C6-7 vertebra level. Thus, by finding claimant's disability at 25%, the deputy implicitly accepted claimant's abnormal disc condition at the C6-7 vertebra level as being causally related to claimant's accident.
The deputy's stated reason for rejecting Dr. Kreider's opinion was that Dr. Kreider had a total lack of understanding as to claimant's true physical abilities and activities in 1982. This finding by the deputy that Dr. Kreider was totally unfamiliar with claimant's true physical abilities was in turn based on claimant's testimony, and Dr. Kreider's opinion supporting claimant's testimony, that claimant was totally unable to engage in any gainful employment since 1978, when, in fact, claimant was able to engage in gainful employment as evidenced by the films introduced into evidence by the employer/carrier showing claimant working in construction. Although we recognize that in many instances a claimant's lying about his disability will preclude the award of compensation benefits, we do not believe that Allman's lack of credibility in this case constitutes an adequate basis for the wholesale rejection of his claim, and in particular, the deputy's rejection of the only competent, substantial evidence, which evidence comports with logic and reason, as to the cause of claimant's condition as voiced by claimant's treating physician, i.e., Dr. Kreider. Rather, we believe that Allman's incredible testimony in this case, relating to his work activities, should have a direct bearing on whether claimant is entitled to temporary total disability benefits prior to and after the time he was hospitalized for the anterior cervical fusion performed by Dr. Kreider at the C6-7 vertebra level.
We believe it necessary to stress that the only direct medical evidence as to claimant's abnormal disc condition at the C6-7 vertebra level was that of Dr. Kreider and that Dr. Kreider's opinion was indirectly supported by the deputy's acceptance of Dr. Montoya's opinion as to the extent of claimant's disability. This case therefore is not a case where the deputy must choose between conflicting medical testimony with respect to causation. Compare Crowell v. Messana Contractors, 180 So.2d 329 (Fla. 1965). Further, we do not mean to imply from our decision that under appropriate circumstances a claimant's lack of credibility might not be the basis for the rejection of the sole physician's opinion on causation. However, we find in this case that Allman's lack of credibility with respect to his work activities does not control the question as to whether his disability was causally related to the industrial accident, but rather, bears on whether he was incapable of working, other than when he was hospitalized, and therefore entitled to temporary total disability benefits.
We do not believe cases such as Tropicana Pools, Inc. v. Truex, 287 So.2d 71 (Fla. 1973), Magic City Bottle & Supply Company v. Robinson, 116 So.2d 240 (Fla. 1959), and Star Fruit Co. v. Canady, 32 So.2d 2 (Fla. 1947), are controlling here. We read these cases as standing for the proposition that under appropriate circumstances lay testimony, particularly that of the claimant, can be probative in establishing simple, uncomplicated kinds of medical facts, such as a claimant's ability or inability to work. Here, however, the establishment of the causal relationship between claimant's injury to his vertebra and claimant's accident would seem to be within the peculiar knowledge of a medical expert. Further, there is no indication in the record that claimant, Allman, lied about the event of his accident and, in connection therewith, Dr. Kreider based his opinion, in part, *961 on the history of claimant's accident as detailed by claimant, and, in part, on the myelogram performed by Dr. Ames in 1978, which myelogram was performed prior to the work activities undertaken by claimant in 1982 and 1983. We therefore find this case more akin to Willingham v. Boynton Service Corp., 383 So.2d 710 (Fla. 1st DCA 1980), rev. denied, 392 So.2d 1372 (Fla. 1980), than cases such as Magic City Bottle & Supply Company, supra, in that the only testimony before the deputy established that claimant's condition at the C6-7 vertebra level, and Dr. Kreider's resulting surgery, were causally related to claimant's accident.[2] Accordingly, we find and hold that claimant was entitled to temporary total disability benefits during the period of his hospitalization in 1982 for the surgery performed by Dr. Kreider at the C6-7 vertebra level and remand this case to the deputy to consider claimant's entitlement to temporary total disability benefits prior to and after this hospitalization.
The remaining points raised on appeal can be disposed of quickly due to our above resolution of Point II on appeal. As noted, we remand to the deputy to consider whether claimant would be entitled to temporary total disability benefits after February 23, 1982, other than during the period of time claimant was hospitalized (Issue III). In connection therewith, we specifically reject claimant's argument that the deputy cannot reject, if he so chooses, Dr. Kreider's testimony that claimant was temporarily and totally disabled during this time period, since the employer/carrier's films of claimant's activities during this time period, and claimant's incredible testimony regarding the same, have a direct bearing on this issue. Next, the deputy commissioner is directed upon remand to consider whether good cause exists to excuse the timely filing of claimant's medical bills, since such issue was raised, but not disposed of by the deputy due to his resolution of the causation issue adversely to claimant, at the hearing below (Issue IV). Finally, the deputy commissioner is directed upon remand to determine an appropriate award of costs, interest, and a reasonable attorney's fee to claimant (Issue V).
REVERSED with directions.
JOANOS, J., concurs.
THOMPSON, J., dissents, with opinion.
THOMPSON, Judge, dissenting.
I dissent. There is competent substantial evidence to support the order of the *962 deputy commissioner (deputy) and I would affirm the order in its entirety.
The claimant contends the deputy erred in ruling on the question of loss of wage earning capacity when this issue was not in the application for hearing, the notice of hearing or the pre-hearing stipulation. I agree with the claimant's contention and the majority holding that notice must be given as to the issues that are to be heard and decided and such notice was not given in this case. The failure to give such notice is normally reversible error. However, in this case the claimant remained silent and made no effort to correct the deputy's order during the 30-day period before the order became final. As this court said in Sunland Hospital/State of Florida v. Garrett, 415 So.2d 783, 784-85 (Fla. 1st DCA 1982):
It is familiar general law that an appellate court will not reverse on a point not preserved in the tribunal of first resort. Hartford Fire Insurance Co. v. Hollis, 58 Fla. 268, 50 So. 985 (1909); Bozeman v. Roberts, 188 So.2d 23 (Fla. 1st DCA 1966). A corollary of that, in workers' compensation appeals, is that we will not reverse for a readily correctable technical error that the deputy was not asked to correct within the time available for correction. Section 440.25(4)(a), Florida Statutes (1981); Genuine Parts Co. v. Morris, 409 So.2d 156 (Fla. 1st DCA 1982); Acosta Roofing Co. v. Gillyard, 402 So.2d 1321 (Fla. 1st DCA 1981).
In Acosta Roofing Co. v. Gillyard, 402 So.2d 1321, 1322 (Fla. 1st DCA 1981), pet. for rev. den., 412 So.2d 463 (Fla. 1982), this court also said:
This error might readily have been corrected by application to the deputy during the 20 day period before it became final. Section 440.25(4)(a), Florida Statutes (1979). Claimant concedes the error now and we will not suppose he would have resisted its correction at that earlier, more appropriate time.
I would therefore affirm the deputy's ruling on this issue.
The claimant next contends that the deputy erred in finding that his continuing complaints and need for medical care after February 26, 1982 were not causally related to his 1975 industrial accident. The deputy's finding in this respect is supported by competent substantial evidence and I would affirm it.
The deputy specifically found in his order:
The claimant testified, both by deposition and before the undersigned, as to his total inability to engage in any gainful employment, including a specific denial of having performed any work activity for the last several years. However, after hearing the testimony of Kevin Schweer, an investigator in New Jersey, and observing the videotape of the claimant's activities in 1982 and 1983, the undersigned finds that the claimant's testimony is totally lacking any credibility. The surveillance film depicted the claimant actively engaged in gainful employment, apparently for his brother-in-law's company, Glenside Equipment Company, a construction firm in New Jersey. The claimant's attempted explanation of his activities depicted in the surveillance is so unbelievable that it only serves as a further basis for totally rejecting the claimant's testimony in this regard. For the foregoing reasons, Dr. Kreider's opinions concerning the claimant's disability, both temporary or permanent, must be rejected as being based on the claimant's continuing complaints.
... .
6. That the claimant's continuing complaints and need for medical care are no longer causally related to the original industrial accident occurring August 21, 1975. In making this finding, the undersigned has had to disregard the medical opinions based on the claimant's continuing voiced complaints. Instead, it has been necessary to apply the medical findings to the claimant's physical activities as the undersigned now believes them to have been. It is apparent to the undersigned that the claimant has been physically active in construction-type work for *963 a long period of time prior to the claimant's recent hospitalization and surgery in October, 1982. Considering the apparent deterioration in the claimant's condition beginning in the Summer of 1982, the undersigned feels that the most logical explanation for his continuing complaints thereafter is due to aggravation of the prior neck injury caused by repeated trauma from the claimant's work activities at Glenside Equipment Company. As previously stated, Dr. Kreider's opinion to the contrary must be rejected based on his total lack of understanding as to the claimant's true physical abilities and activities in 1982. The claimant further testified to his disability and inability to engage in work activities following surgery and continuing to the present time. However, the surveillance videotape clearly demonstrates the claimant's ability to engage in vigorous physical activity involving all parts of his body.
I agree with the claimant and the majority that Dr. Kreider's testimony provides evidence that claimant's condition and complaints were causally related to his 1975 industrial accident. However, because of the doctor's total lack of knowledge as to the claimant's true physical abilities and activities, the deputy did not err in finding the testimony was not competent substantial evidence and did not err in disregarding this testimony. Assuming for the sake of argument that Dr. Kreider's testimony was competent substantial evidence, as this court has said a number of times, the issue is not whether there is competent substantial evidence to support appellant's position for reversal but whether there is competent substantial evidence to support the deputy's order. Swanigan v. Dobbs House, 442 So.2d 1026 (Fla. 1st DCA 1983). The deputy found that the claimant's testimony regarding his activities and inability to engage in any gainful employment, including his specific denial of having performed any work activity for the last several years was so totally lacking in credibility and so unbelievable that it served as a basis for rejecting the claimant's testimony in that regard. He also found that Dr. Kreider's testimony concerning the claimant's disability must be rejected because it was based on claimant's continued complaints and his statements regarding his inability to perform any work activities. On the basis set forth in the order, the deputy did not err in rejecting the claimant's testimony and in rejecting the testimony of Dr. Kreider which was based on claimant's misrepresentations as to his activities, capabilities, and employment.
There is competent substantial evidence in the record to support the deputy's finding that the claimant could work and that his alleged disabilities and complaints were not causally related to his industrial accident. As a result of his industrial accident, the claimant had sustained an injury to the C5-C6 area and subsequently had a fusion performed in that area. In February of 1982 claimant was examined by Dr. Montoya, who found that the claimant had spondylolysis and degenerative disc disease in the C6-C7 area below the area of the fusion necessitated by the industrial accident. Dr. Montoya was also of the opinion that claimant had reached maximum medical improvement and could return to light work. Dr. Montoya's report, as well as medical reports of other doctors indicated that a functional overlay or emotional or psychiatric problems contributed to claimant's complaints.
Because the claimant's compensable accident occurred prior to August 1, 1979, the deputy is not required to base his determination of any permanent impairment on medically or scientifically demonstrable findings. He had the right to ignore the expert medical testimony and to give greater weight to lay testimony and his own observations and evaluations. See Magic City Bottle & Supply Co. v. Robinson, 116 So.2d 240 (Fla. 1959); Andrews v. Strecker Body Builders, Inc., 92 So.2d 521 (Fla. 1957); and Star Fruit Co. v. Canady, 32 So.2d 2 (Fla. 1947). In Magic City, 116 So.2d at 243, the court said:
This Court has held on many occasions that the opinions of medical experts are not in and of themselves conclusive in *964 matters of this kind, and in some cases the deputy commissioner may disregard the opinion of the expert and give greater weight to the lay testimony of demonstrative evidence presented to him. (footnote omitted).
Claimant testified both by deposition and personally before the deputy as to his total inability to engage in any gainful employment and specifically denied having engaged in any work activity for the last several years. The deputy personally viewed a video tape of claimant's activities in 1982 and 1983 and was thus able to observe the claimant actively engaged in work activities including the following: directing employees working at the construction site; driving a pickup truck; removing and placing articles in the pickup truck; driving a tractor; loading the tractor on a trailer; and bending over and putting blocks of wood under a trailer. The fact the claimant could and did engage in these activities completely contradicts the claimant's testimony that he was unable to work and that he had not worked at all for the past several years.
If the claimant's condition and complaints are not causally related to his 1975 industrial accident, then the remaining three issues relating to the deputy's failure to award temporary total disability, permanent partial disability, medical bills, mileage, prescriptions, costs, interest, and attorney's fees should also be affirmed.
There being competent substantial evidence to support the deputy's award, it should be AFFIRMED.
NOTES
[1] We note that the deputy commissioner stated in his order on review that he was exercising the reservation of jurisdiction set forth in his order entered on September 10, 1979, in making his findings as to claimant's entitlement to additional disability benefits other than those applied for in claimant's application for hearing. We find, however, that the deputy's reservation of jurisdiction on these issues did not grant him authority to disregard the notice requirements mandated by Fla.W.C.R.P. 8(a) and the above-cited case law, and as a consequence thereof, deny claimant an opportunity to present testimony and argument on these issues.
[2] In his dissent, Judge Thompson cites Magic City Bottle & Supply Co. v. Robinson, 116 So.2d 240 (Fla. 1959) for the proposition that the deputy had the right to ignore the expert medical testimony in this case and to give greater weight to lay testimony and the deputy's own observations and evaluations of claimant. However, as noted in our opinion, we do not read Magic City so broadly. Rather, we read Magic City, as applies to this case, for the proposition that claimant's testimony may be probative in determining claimant's ability to perform work. On such an issue, a deputy may properly disregard medical expert opinion since a claimant's inability to work is a hybrid question, involving both medical evidence and a claimant's own testimony. See Sanlando Utility Corp. v. Morris, 418 So.2d 389, 392 (Fla. 1st DCA 1982); Ardmore Farms, Inc. v. Squires, 395 So.2d 268, 270 (Fla. 1st DCA 1981). Accordingly, upon remand the deputy could determine (we expressly do not decide this issue, as we believe it is best resolved by the deputy upon remand after taking into consideration various factors such as the time needed by claimant to recuperate from his surgery) that claimant is not entitled to temporary total disability benefits for certain periods of time prior to and/or subsequent to claimant's hospitalization in 1982. Such a determination could be made even though Dr. Kreider opined, based on claimant's subjective complaints, that claimant was unable to engage in any gainful employment from March of 1979 to the date of his deposition in February of 1983, since the deputy was able to view films contrary to Dr. Kreider's opinion. See Rodriguez v. Miami Baking Co., 430 So.2d 955 (Fla. 1st DCA 1983). However, claimant's abnormal disc condition at C6-7 vertebra level, and the etilogy for the same based on an examination of claimant, previous myelograms, and prior medical records, are not matters readily susceptible to determination by the deputy through his observations of claimant. Rather, such matters are essentially medical questions, the most persuasive evidence on which is expert medical testimony. See Decks, Inc. of Florida v. Wright, 389 So.2d 1074, 1076 (Fla. 1st DCA 1980); compare Sanlando Utility and Ardmore Farms, supra.