454 So.2d 765 (1984)
Frances JACKSON, Appellant,
v.
DADE COUNTY SCHOOL BOARD and Gallagher Bassett Insurance Service, Appellee.
No. AV-226.
District Court of Appeal of Florida, First District.
August 24, 1984.
*766 Mark L. Zientz, of Williams & Zientz, Coral Gables, for appellant.
Steven Kronenberg, of Adams, Kelley & Kronenberg, Miami, for appellees.
SHIVERS, Judge.
In this workers' compensation case, Jackson appeals a deputy commissioner's order which denies and dismisses her claim. She contends that the deputy commissioner erred in rejecting the testimony of her psychiatrist, Dr. Mutter. We reverse and remand.
Claimant was injured in a compensable industrial accident on January 27, 1981. She was in an elevator which stopped abruptly, throwing her to the side of the elevator and jarring her back. Dr. Stein, an orthopedic surgeon, diagnosed acute lumboscral strain and treated claimant for this injury. By August 13, 1981, appellant had reached maximum medical improvement (MMI) from an orthopedic standpoint. However, claimant was examined by Dr. Mutter, the only psychiatric expert to testify in this case, who opined that claimant suffered from agitated depression causally related to her industrial accident, that she needed psychotherapy and hypnotherapy, and that she had not reached MMI from a psychiatric standpoint.
Concerning Dr. Mutter's testimony, the deputy commissioner found as follows:
I reject the opinions of Dr. Mutter for a variety of reasons, among which are the failure of the claimant to advise Dr. Mutter of her self-employment as a Shaklee distributor, her announced retirement as a school teacher, her high earnings as a Shaklee distributor, and my own observations of the claimant. All of these things have so lessened her credibility as to make that which she says unworthy of belief. In making these findings I have accepted the testimony of the private investigator, Juan Cayado, that the claimant told Cayado that she was making approximately $3,400 per month as a Shaklee distributor and that she had retired as a school teacher and did not wish to do that work any longer when she could make so much more money as a Shaklee distributor. It follows, therefore, that the claimant had financial reasons for not accepting and performing suitable employment with the School Board.
The deputy commissioner is, of course, entitled to reject claimant's testimony as unworthy of belief. See John Caves Land Development Co. v. Suggs, 352 So.2d 44 (Fla. 1977); Barnett v. Lakeland Construction Co., 417 So.2d 834 (Fla. 1st DCA 1982). A deputy commissioner can reject expert testimony, even uncontradicted expert testimony, where the expert's opinion is based on assumptions not supported by the evidence. Arkin Construction Co. v. Simpkins, 99 So.2d 557 (Fla. 1957). A deputy commissioner can reject expert testimony and base a decision on lay testimony and other evidence where the question concerns matters which are within the knowledge and sensory experience of lay persons, e.g., the existence and location of pain, sequence of events and actual ability or inability to perform work. Decks, Inc. of Florida v. Wright, 389 So.2d 1074 (Fla. 1st DCA 1980). Some issues, however, involve essentially medical questions which are most persuasively answered by medical experts, e.g., whether a claimant has reached MMI. Sanlando Utility Corp. v. Morris, 418 So.2d 389 (Fla. 1st DCA 1982). Where the question is essentially a medical one, a deputy commissioner should offer a sufficient reason for rejecting expert medical *767 testimony, especially if such testimony is unrefuted. Castro v. Florida Juice Division, 400 So.2d 1280 (Fla. 1st DCA 1981), rev. denied, 412 So.2d 465 (Fla. 1982). In the instant case, we find the stated reasons for the rejection of Dr. Mutter's testimony insufficient.
Although Dr. Mutter, at the time of his examination, was unaware of the claimant's current vocational activities and did not know how much she earned, Dr. Mutter's opinion did not change when he was informed of these matters on cross-examination. Dr. Mutter appeared to be uninterested in whether or not claimant was motivated to return to work. When asked if he formed any impression as to whether or not claimant was motivated to return to work he replied, "No, not at that point. My examination was more specifically centered towards determining whether or not she had a psychological problem, what it was related to, and what kind of treatment would be indicated to help her with that." In short, the assumptions and facts underlying Dr. Mutter's opinion appear to be wholly unrelated to the facts recited by the deputy commissioner in rejecting the doctor's testimony. Dr. Mutter indicated that his suggested treatment was intended to help claimant alter some of her physical symptoms and alleviate her mental problems. Dr. Mutter's opinion that claimant continues to have psychological problems was in small part bolstered by Dr. Stein's note from January 1983, that claimant appeared anxious and depressed.
The facts of the instant case, which involve the relationship between a claimant's credibility and a doctor's opinion, are remarkably similar to those in Allman v. Meredith Corp., 451 So.2d 957 (Fla. 1st DCA 1984). In that case the deputy commissioner also rejected a doctor's opinion because the claimant was untruthful, and the deputy commissioner found that the doctor was totally unfamiliar with claimant's true physical abilities. This court stated that, although a claimant's lack of candor about his disability might preclude an award of compensation benefits, Allman's lack of credibility did not constitute an adequate basis for the wholesale rejection of the only competent, substantial evidence as to the cause of his condition. In the instant case, the deputy commissioner did not have the benefit of our opinion in Allman at the time he rendered his decision.
Although we find the deputy commissioner's stated reasons for rejecting Dr. Mutter's opinion are insufficient, the wording of the order implies that the deputy commissioner had other reasons for rejecting the opinion which he did not state. Therefore, we remand this case to the deputy commissioner to reconsider Dr. Mutter's testimony in light of this opinion and Allman.[1]
REVERSED and REMANDED.
WIGGINTON, J., concurs.
MILLS, J., dissents with opinion.
MILLS, Judge, dissenting:
I dissent. I would affirm.
The deputy's order is supported by competent substantial evidence and the law. I adopt the deputy's order in part as my dissent. It is as follows:
3. The claimant sustained a compensable injury on January 27, 1981, at which time an elevator in which she was riding jerked, causing her to *768 reinjure her back. This claim was accepted as compensable by the employer and its servicing agent and the claimant was afforded authorized medical care through Dr. Jay Stein, Dr. Donald Dooley, Dr. Albert Ray, Dr. Jess Spirer, and Baptist Hospital. In addition, she was paid temporary total disability benefits from January 28, 1981; and from October 5, 1981, to November 9, 1981.
4. This claimant was previously injured on December 18, 1975, and March 18, 1977. On both occasions she suffered injury to her back and was given a permanent partial disability of the body as a whole rating by Dr. Basil Yates of 22%. That case was ultimately settled and an order was entered by former Deputy Commissioner Hughlan Long on October 7, 1980. That stipulation and the order approving same were admitted into evidence and the undersigned acknowledges the information contained therein.
5. In addition to the authorized physicians, the claimant was seen by Dr. Charles Mutter, an unauthorized psychiatrist. No claim was made for the bill of Dr. Mutter. I reject the opinions of Dr. Mutter for a variety of reasons, among which are the failure of the claimant to advise Dr. Mutter of her self-employment as a Shaklee distributor, her announced retirement as a school teacher, her high earnings as a Shaklee distributor, and my own observations of the claimant. All of these things have so lessened her credibility as to make that which she says unworthy of belief. In making these findings I have accepted the testimony of the private investigator, Juan Cayado, that the claimant told Cayado, that she was making approximately $3,400.00 per month as a Shaklee distributor and that she had retired as a school teacher and did not wish to do that work any longer when she could make so much more money as a Shaklee distributor. It follows, therefore, that the claimant had financial reasons for not accepting and performing suitable employment with the School Board.
6. I also accept the opinion of Dr. Stein over any opinions to the contrary since this deposition testimony is more in accord with my own observations about the claimant and her credibility. I accept Dr. Stein's opinion that he had given a rating to this claimant of 20% of the body as a whole on October 2, 1978. That rating was based on the American Academy of Orthopedic Surgeons guide. (According to Dr. Stein, that would equate to 14% whole man impairment under the AMA guides.)
7. This claimant was seen by Dr. Stein on January 30, 1981, for the accident of January 27, 1981. As a consequence of that accident, Dr. Stein felt, and I so find, that the claimant had an acute lumbosacral sprain which was transient, not permanent, so that he expected it to be resolved by the Spring of 1981. The claimant failed to return to Dr. Stein from February 17, 1981, until August 13, 1981, by which latter date maximum improvement had been reached. I will give the claimant the benefit of this doubt and find that maximum medical improvement was reached August 13, 1981, at which time the temporary aggravation had subsided and she had reverted to the same condition she had and which existed prior to January 27, 1981. Therefore, I find that there is no permanent physical impairment existing as a result of this accident of January 27, 1981, so as to entitle this claimant to wage loss benefits.
8. Multiple hearings were held in this case commencing February 11, 1982. The claimant was present at *769 each of those hearings. I have had the opportunity to observe her and her demeanor, as well as her physical actions. Prior to the showing of surveillance movies, the claimant demonstrated a rather pronounced inability to get around by herself. I observed her to walk holding on rather heavily to her husband. She also walked very slowly. I also observed her in the hearing room to walk slowly and in some instances to actually hold onto the wall in order to move from one place to the other. However, after the surveillance video tape was shown, the claimant did not walk in the same manner nor did she demonstrate to me any true evidence of disability and/or impairment.
9. A job was located for the claimant through Jackson Memorial Hospital and Mr. Randall Albert of that facility. I accept Mr. Albert's evalauation of this woman and his opinion that her refusal to accept employment was based on an avowed fear of jeopardizing her workers' compensation claim should she accept any employment. I also find that the claimant had physical capabilities beyond that which she admits and could do many things if she were so motivated.
10. Based on my finding that the claimant sustained only a temporary aggravation of her pre-existing condition by virtue of the accident of January 27, 1981, I find that the claimant is not in need of any further medical care and that no such care is attributable to the accident of January 27, 1981.
NOTES
[1] Even if the deputy commissioner here ultimately accepts the testimony of Dr. Mutter, that acceptance would not automatically translate into an award of temporary compensation benefits. In fact, the deputy commissioner's implied findings, that claimant is self-employed with a large income and that claimant no longer desires other work, would appear to preclude an award of temporary or permanent compensation benefits. Acceptance of Dr. Mutter's testimony, however, would affect the finding of date of MMI as well as claimant's entitlement to further psychiatric treatment.

We reject appellee's suggestion that no psychiatric care was claimed sub judice. The pretrial stipulation lists Dr. Mutter under "medical treatment claimed but not accepted." Further, a claim was made for "future med." We note that psychiatry is a branch of medicine and that Dr. Mutter is a psychiatrist.