576 So.2d 801 (1991)
Mary Ruth YOUNKMAN, Appellant,
v.
WASTE COLLECTION SERVICES and the Claims Center, Appellees.
No. 90-1411.
District Court of Appeal of Florida, First District.
March 11, 1991.
Rehearing Denied April 22, 1991.
Capp P. Taylor, St. Petersburg, for appellant.
Kathleen R. Hudson, St. Petersburg, for appellees.
ALLEN, Judge.
The appellant/claimant in this workers' compensation appeal alleges several points of error in the judge of compensation claims' order denying benefits based upon findings that the appellant's lost wages and psychiatric care expenses were not the result of an injury arising out of and in the course of her employment. We determine that competent substantial evidence supports the conclusion reached by the judge of compensation claims, and we affirm the order under review.
On July 31, 1988, while working for appellee, Waste Collection Services, the appellant was pulled into a bathroom by one of her employer's male customers. He told her that he was going to have sexual relations with her and attempted to pull up her skirt. The appellant was able to push the man away from her, and the incident then ended. She quit her job a few days later. Several months thereafter, the claimant sought temporary total, temporary partial, and wage loss benefits, as well as payment *802 of various bills for psychological and psychiatric care. She claimed that the benefits were due because she had suffered a psychiatric disability as a result of the incident at work. One of the defenses raised by the appellees was that her disability was due to a preexisting psychiatric condition.
Testimony and medical records presented at the hearing indicated that the appellant was hospitalized with psychiatric problems on three occasions during the months following the incident at work. Record evidence also indicated that the appellant's post-incident hospitalizations were only the latest in a series of psychiatric hospitalizations over a period of several years. The only medical testimony relating to whether the appellant's psychiatric condition after July 31, 1988, was caused by the incident at work was given by Dr. Cohen. Dr. Cohen did not begin to treat the appellant until June of 1989, several months after the appellant made claims for workers' compensation benefits. Other medical evidence consisted of the medical records and correspondence of Dr. Schwab, who treated the appellant from August of 1988 until his death in June of 1989.
The history that Dr. Schwab took from the appellant included information as to a long-standing psychiatric condition, which had involved several hospitalizations. Dr. Schwab, characterized by Dr. Cohen as a "quite complete" record-keeper, made notes from his early visits with the appellant about various "stressors" which she reported to him. These included a recent job change, a recent move, the recent loss of a friend due to suicide, persistent low back pain, jaw pain due to TMJ, and having been the victim of a rape in May of 1988 and the victim of sexual abuse in earlier years. Although Dr. Schwab attended the appellant through several office visits and three hospitalizations during the six months following the date of the incident at work, his notes for that period contain no indication that the appellant ever mentioned the incident. The first mention of the incident appears in Dr. Schwab's office notes of February 24, 1989, in conjunction with the doctor's indication that the appellant was considering filing for workers' compensation benefits. Then, on March 23, 1989, Dr. Schwab sent a report to the appellant's attorney, in which he described his understanding of the incident, and discussed the appellant's psychiatric condition and her prognosis for recovery.
From Dr. Cohen's testimony, it appeared that the appellant's reports to him regarding the source of her depression had been limited to telling him about the incident at work. Dr. Cohen's testimony upon direct examination came close to indicating that the appellant's psychiatric problems were caused by the work incident. He testified as follows:
Obviously, apparently, according to her, the precipitant factor was this sexual attack that she had had, I think, in '88. She had just been unable to function at all, it seems, with any consistency after that episode.
(Emphasis supplied). However, after he learned, during cross-examination, of the stressors previously revealed to Dr. Schwab, Dr. Cohen testified that a rape would be a stressor of 10, whereas an incident like the incident which occurred on July 31, 1988, would be a 7 or 8 on a scale of 10. After learning of the additional stressors, Dr. Cohen offered the opinion that the appellant's experience at work was merely "a factor in her very depressed state." The testimony upon redirect examination was as follows:
Q. Do you feel that this major depression is linked to this sexual attack of July or August of '88 we have talked about?
.....
A. Well, I surely feel it was a factor.
Q. Nobody's asking you whether it was the cause?

A. Definitely a factor. I don't think we can minimize that one. It's a factor in her very severe depressed state.
Q. Even assuming her friend committed suicide and assuming she was raped by a stranger, assuming she was abused as a child, whatever, had a bad marriage, is it still a factor?
A. I definitely think so.
*803 (Emphasis supplied). In his testimony, Dr. Cohen repeatedly indicated that he could offer no explanation for why Dr. Schwab would not have mentioned the July 31, 1988 incident in his notes prior to February of 1989, unless the claimant, who he described as being "pretty verbal," had simply not told Dr. Schwab about the incident until February of 1989.
The judge of compensation claims found that the claimant's psychiatric condition after July 31, 1988, was a continuation of her preexisting psychiatric condition. He further found that the appellant's testimony as to the source of her depression after July 31, 1988, was not credible, and that Dr. Cohen's testimony indicated that the work incident was merely one of many stress factors contributing to the claimant's psychiatric condition after that date. Accordingly, the judge concluded that the appellant's condition was not the direct and proximate result of an injury arising out of and in the course of her employment, and was therefore not covered by the workers' compensation law. See Section 440.09, Florida Statutes.
Even where a claimant has suffered a history of psychiatric problems, an aggravation of a psychiatric condition may be compensable if it is the direct and proximate result of an industrial accident. Deneault v. Alachua County School Bd., 555 So.2d 909, 914 (Fla. 1st DCA 1990); Franklin Manor Apartments v. Jordan, 417 So.2d 1159 (Fla. 1st DCA 1982), review denied, 426 So.2d 26 (Fla. 1983). We have held that the question of causation of medical problems is peculiarly within the knowledge of medical experts and, accordingly, where the only medical testimony presented indicates that the industrial accident is the cause of the medical problem, it should be accepted unless the judge of compensation claims can offer a "sufficient reason" for rejecting it. Calleyro v. Mt. Sinai Hosp., 504 So.2d 1336 (Fla. 1st DCA 1987), review denied, 513 So.2d 1062 (Fla. 1987); Jackson v. Dade County School Bd., 454 So.2d 765 (Fla. 1st DCA 1984); Allman v. Meredith Corp., 451 So.2d 957 (Fla. 1st DCA 1984). Therefore, if the unrefuted medical testimony presented in the present case indicated that the appellant's psychiatric condition after July 31, 1988, was caused by the incident which occurred on that date, the judge was required to either accept the testimony or offer a sufficient reason for rejecting it.
From our review of the record, we are satisfied that the medical testimony did not clearly indicate that the appellant's psychiatric condition was caused by the work incident. The only medical testimony offered on the question of causation was the testimony of Dr. Cohen. After he learned of the numerous stressors affecting the appellant in mid-1988, he testified that the work incident was just "a factor in her very depressed state." We believe it significant that the appellant's counsel was very careful when questioning Dr. Cohen, to let him know that he was not being asked to give an opinion as to "the cause" of the appellant's condition. This situation is very different from that which exists where the unrefuted medical testimony is that the industrial accident has caused the ensuing medical condition. Calleyro, Jackson, and Allman each involved testimony which indicated that an industrial accident had caused a medical condition. The medical testimony presented here was competent evidence going to the issue of causation, but it was not sufficiently definitive to require the judge, absent articulated "sufficient reason" for rejection, to find that the appellant's condition was the direct and proximate result of the work incident.
The evidence presented in this case was adequate for the judge to have decided the causation question in favor of the appellant. It appeared from the evidence presented that the appellant's psychiatric condition probably worsened in the months following the work incident. This, together with the appellant's testimony as to causation and Dr. Cohen's expert testimony that the work incident was a factor in her condition, would have been competent substantial evidence to support a finding that the work incident was the proximate cause of the appellant's psychiatric condition thereafter. But, this was not the conclusion *804 reached by the judge, and, as we have said many times, the issue is not whether there is competent substantial evidence to support an appellant's argument but whether there is competent substantial evidence to support the order under review. Swanigan v. Dobbs House, 442 So.2d 1026 (Fla. 1st DCA 1983).
We determine that the evidence also permits the conclusion reached by the judge of compensation claims. Dr. Cohen's testimony revealed that reliance was placed upon the appellant in providing correct information as to the extent of stress she felt as a result of the work incident. The judge found it persuasive that the appellant had apparently not told Dr. Schwab about the work incident until over six months after he began treating her, and then, only in connection with a discussion regarding the appellant's plans to file a claim for workers' compensation benefits. An equally persuasive circumstance was the appellant's apparent failure to tell Dr. Cohen about any stressor other than the work incident. The deception which can be inferred from these circumstances, together with the fact that the appellant was affected by many stressors, some even more powerful than the work incident, was sufficient to have led a reasonable fact finder to the conclusion that the work incident was not the direct and proximate cause of the appellant's condition.
Accordingly, we hold that the conclusion reached by the judge of compensation claims was supported by competent substantial evidence. The order under review is affirmed.
SHIVERS, C.J., concurs.
BOOTH, J., dissents with opinion.
BOOTH, Judge, dissenting:
The JCC found, and it is not contested on this appeal, that claimant was subjected to an attempted sexual assault by the employer's customer, that the assault involved actual physical contact and was promptly reported to the employer and the police. The JCC also found that claimant suffered from a number of preexisting psychiatric illnesses and opined that claimant's present condition and need for psychiatric care and hospitalization was "no more than a continuation of the chronic problems that claimant had suffered for many years." In reaching this result, the JCC characterized the evidence on causation as "insufficient" and stated:
Evidence to support a possibility of a causal relationship is insufficient to support a finding of a causal relationship. Based on the facts of the instant case the most that can be concluded from the totality of the evidence presented, is that there is a "possibility" that the incident of July 31, 1988, may be one of many stress factors contributing to an exacerbation of claimant's preexisting psychiatric condition. [emphasis added]
The record reveals, contrary to the foregoing finding, that the expert witnesses opined that the attempted assault "definitely [was] a factor in her present condition," and that the severe depression suffered by claimant was "directly related" to the sexual assault, "a cause and effect situation."
A claimant for compensation benefits based on aggravation of a preexisting condition, need not establish that the work connected accident was the sole cause of the present condition. Obviously, such a requirement would preclude compensation for all preexisting conditions that are aggravated in the workplace. The employer must take the employee as it finds him. As stated in Larson's:[1]
[A] preexisting weakness in the form of a neurotic tendency does not lessen the compensability of an injury which precipitates a disabling neurosis. Thus, when an employee had previously suffered from schizophrenia, the precipitation of a recurrence of this mental disease by a severe heat stroke was held a compensable personal injury.
*805 In Prahl v. Phillips, 429 So.2d 386, 387 (Fla. 1st DCA 1985), a robbery at the workplace resulted in claimant having a gun placed at her head and a ring removed, and she was forced to lie on the floor. Medical testimony was that her neurosis was precipitated by the robbery. This court held that the nondisabling physical trauma was a significant causative factor in claimant's ensuing psychiatric impairment. In Watson v. Melman, 106 So.2d 433 (Fla. 3d DCA 1958), claimant was hit in the head with a cardboard spool and thereafter suffered traumatic neurosis. The deputy in that case found that claimant's son had died of an accidental head injury and that the blow to the head had "symbolic significance."
It is clear that neither the Prahl nor Watson cases, supra, require that the claimant's work-connected injury be the sole factor in the ensuing psychiatric condition. Therefore, the JCC erred in both his interpretation of the medical evidence, characterizing it as establishing a "mere possibility" and in his application of the law to the facts.
A third error was the JCC's rejection of the medical testimony of causation based on delay in reporting the assault to Dr. Schwab, who was deceased at the time of the hearing. The JCC rejected claimant's testimony that she reported the assault to Dr. Schwab, based on the fact that the deceased doctor did not record the incident in his medical records until February 1987, seven months after the assault.
Where occurrence of the accident is challenged, reporting and time of reporting becomes a fact which may give rise to a negative inference. This is not such a case. Here, there is no doubt that the assault occurred, as previously noted, and was duly reported to the employer and to the police. There is further no doubt that, given claimant's history (victim of rape and abuse), the assault was particularly traumatizing. What the JCC is apparently holding is that the claimant, despite her serious mental problems and lack of expert knowledge, should have recognized the significance of the assault as bearing on her psychiatric condition and promptly reported it to her doctor. Failing that, her condition is held not to be compensable. To state this proposition is to reveal its lack of merit.
The doctors were able to state that the assault was a factor in her present condition. Claimant's delay in reporting was not a factor in this determination of causal relationship. The JCC erred in rejecting uncontradicted medical evidence here.
This court has held that even lack of candor on the part of a claimant does not permit the JCC to reject unrefuted expert testimony where undisclosed information does not affect the expert's opinion. In Calleyro v. Mt. Sinai Hospital, 504 So.2d 1336 (Fla. 1st DCA 1987), claimant denied having any psychiatric treatment prior to the industrial accident, whereas in fact she had received a psychiatric evaluation after an earlier automobile accident. This court stated (504 So.2d at 1337):
Dr. Hernandez was moreover never asked whether his opinion regarding the causation of claimant's injury would have changed if he had been aware of the prior single visit by claimant to a psychiatrist.
In Allman v. Meredith Corporation, 451 So.2d 957 (Fla. 1st DCA 1984), this court reversed denial of compensation, holding that claimant's lack of credibility with respect to his work activities was not controlling on causal relationship and did not justify rejection of medical testimony that claimant's need for medical care was related to the industrial accident, holding (451 So.2d 957, 960):
Although we recognize that in many instances a claimant's lying about his disability will preclude the award of compensation benefits, we do not believe that Allman's lack of credibility in this case constitutes an adequate basis for the wholesale rejection of his claim, and in particular, the deputy's rejection of the only competent, substantial evidence, which evidence comports with logic and reason, as to the cause of claimant's condition as voiced by claimant's treating physician, i.e., Dr. Kreider.
*806 In Jackson v. Dade County School Board, 454 So.2d 765 (Fla. 1st DCA 1984), the deputy rejected the testimony of the psychiatric expert that claimant had not reached maximum medical improvement. The basis for the deputy's rejection of the expert testimony was that the expert was unaware of claimant's current vocational activities. This court reversed on the ground that the expert's opinion was unaffected by that missing information, holding (454 So.2d at 767):
[T]he assumptions and facts underlying Dr. Mutter's opinion appear to be wholly unrelated to the facts recited by the deputy commissioner in rejecting the doctor's testimony... .
The facts of the instant case, which involve the relationship between a claimant's credibility and a doctor's opinion, are remarkably similar to those in Allman v. Meredith Corp., 451 So.2d 957 (Fla. 1st DCA 1984). In that case the deputy commissioner also rejected a doctor's opinion because the claimant was untruthful, and the deputy commissioner found that the doctor was totally unfamiliar with claimant's true physical abilities. This court stated that, although a claimant's lack of candor about his disability might preclude an award of compensation benefits, Allman's lack of credibility did not constitute an adequate basis for the wholesale rejection of the only competent, substantial evidence as to the cause of his condition.
The Calleyro, Allman, and Jackson cases, supra, hold that the JCC may not reject uncontradicted expert testimony on "expert" issues, such as causation, based on claimant's failure to disclose information where that information, when disclosed to the expert, does not affect his conclusion. Here, Dr. Cohen's testimony was that, regardless of claimant's apparent delay in reporting to Dr. Schwab, the assault was a major factor in her present condition.
The order below should be reversed.
NOTES
[1] 1B Larson's Workmen's Compensation Law Personal Injury § 4.22(b) at 7-621  7-624 (1987).