481 So.2d 1265 (1986)
ESPADA ENTERPRISES, INC. and Home Indemnity Co., Appellants,
v.
Geoffrey SPIRO, Deceased Employee, and Catherine Spiro, Widow, Appellees.
No. BF-73.
District Court of Appeal of Florida, First District.
January 15, 1986.
Rehearing Denied February 14, 1986.
*1266 Barry A. Pemsler, of Richard & Pemsler, Miami, for appellants.
Jay M. Levy, of Hershoff & Levy, Miami and George N. Nachwalter, Miami, for appellees.
ERVIN, Judge.
In this worker's compensation case, involving a claim for death benefits, the employer/carrier (e/c) appeals from the deputy commissioner's (d.c.) order, finding that an employee's death arose out of and in the course of his employment. We reverse.
Spiro (the employee) was the sole owner and corporate officer of an International House of Pancakes (IHOP) restaurant located in Boynton Beach, Florida. Spiro resided in Miramar, Florida, approximately 20 miles south of the IHOP. On January 29, 1982, between 1:00 and 2:00 a.m., Spiro was found shot to death in his automobile, at a place some 50 miles south of the IHOP in the "Little River" area of Miami.
Gary Dukes, a night cook at the IHOP testified that Spiro normally made nightly deposits at the Century Bank in Boynton Beach, located one block from the IHOP. Dukes, however, did not work the evening of the murder, and so was unable to say whether Spiro in fact did so on the evening in question. His sister, Rosa Dukes Faulk, also a cook at the IHOP, testified that she worked the day shift on January 28, 1982 from 7 a.m. to 3 p.m. She, like her brother, stated that Spiro made frequent nightly deposits at the Century Bank following the close of the business day. On the evening of January the 28th at 8:30 p.m., Spiro phoned her, telling her she could pick up her paycheck the following day. According to Faulk, this meant that Spiro had reached his quota of no less than $1,600, the amount he normally deposited. She was uncertain, however, whether Spiro had made the deposit that same evening. Spiro's widow testified that between eleven and twelve p.m. on the 28th, Spiro called, saying that he was on his way to the bank in Boynton Beach and would be home soon. The evidence established that there was no deposit made on that evening, or the following morning.
The e/c called to the stand Tynese Moore, a 21-year-old prostitute from Miami, who stated that during the early morning hours of January 29, 1982, Spiro approached *1267 her and sought oral sex, while she was working the streets near Northwest 79th Street in Miami. After agreeing upon the price, Moore got into Spiro's vehicle and performed the act. Thereafter, according to Moore, four black men approached Spiro's vehicle and one shot him in the head. She escaped from the passenger's side door, ran therefrom and summoned a nearby police officer to the scene. Photographs of Spiro were admitted into evidence, revealing that he had died in his car from a bullet wound to his head, with his pants pulled down from below his waist.
A deputy sheriff for the Metro Dade County Police Department testified that a woman summoned her to the scene of the shooting at approximately 1:25 a.m. on January 29, 1982. The parties then stipulated to the following: (1) The police found $300 in Spiro's car at the time of the shooting; (2) the shooting took place between 1:30 and 2 a.m. on the morning of the 29th; (3) the officers arrived within 10 minutes of the shooting; and (4) the shooting took place at the scene. Due to an ongoing homicide investigation, the autopsy report was inspected in camera and was not admitted into evidence.
The d.c. rejected Moore's testimony, in part, because the autopsy report neither indicated that Spiro had recent sexual activity, nor showed any saliva residue on his body, which would, in his view, be inconsistent with her testimony. The d.c. further stated:
There ... [is] a presumption that claims come within the purview of Chapter 440... . There is a reasonable inference and I find that the claimant was on his way to make a deposit which was necessary for his employer at the time when he was either robbed and killed or robbed and kidnapped by person or persons unknown... . The claimant's body may well have been brought to Dade County in an effort to confuse investigators of this criminal act. It may have been brought to Dade County still alive with the thought of holding him for additional sums of money as ransom. We may never know the actual facts as death has sealed the claimant's lips and the identity of the perpetrator still remains unknown.
(emphasis supplied).
Under Florida Workers' Compensation law, "to be compensable, an injury [or death] must arise out of employment in the sense of causation and be in the course of employment in the sense of continuity of time, space, and circumstances". Strother v. Morrison Cafeteria, 383 So.2d 623, 628 (Fla. 1980). We find three separate bases to reverse the award of death benefits.
First, although the autopsy report was not admitted into evidence, the d.c. made several findings in his order based on the report. In Sanlando Utility Corp. v. Morris, 418 So.2d 389, 391 (Fla. 1st DCA 1982), we stated, "it ... [is] prejudicial error to base an order on reports ... not placed into evidence". This error cannot be considered harmless since the d.c. relied on the autopsy report in part to discredit Moore's crucial testimony.
Second, in regard to that part of the d.c.'s order of compensability based upon the general presumption that workers' compensation claims should be considered compensable, the Florida Supreme Court has stated that the presumption of compensability applies only "where an accident occurs while an employee is at his place of employment during working hours under circumstances such that no evidence of cause is available". Hacker v. St. Petersburg Kennel Club, 396 So.2d 161, 163 (Fla. 1981) (emphasis supplied). Where, however, there is conflicting evidence as to the cause of death, and death does not occur at the place of employment during working hours, the claimant must prove a causal connection between employment and the employee's death and no connection may be drawn by the presumption. Id. As the facts in this case clearly fall within the latter rule, the d.c. erred in applying the presumption.
*1268 Finally, there is absolutely no evidence supporting the deputy's finding of a causal connection between Spiro's employment  relating to any night bank deposit in Boynton Beach  and his death 50 miles to the south in Miami. Indeed, the deputy's finding that "the claimant was on his way to the bank to deposit funds ... when he was probably accosted, ... robbed,... kidnapped or shot right there and transported to Dade County ... in an effort to confuse law enforcement officers ..." (emphasis supplied) is at variance with the parties' stipulation that the shooting took place at the crime scene in Miami. Although a deputy is not bound by a stipulation if the evidence presented at the hearing is at variance with the facts recited in the stipulation, Woods v. Greater Naples Care Center, 406 So.2d 1172, 1173 (Fla. 1st DCA 1981), in the absence of any such contradictions or of fraud, overreaching, misrepresentation, or concealment, the deputy should honor the stipulated facts entered into between the worker or his representative and his employer. Steele v. A.D.H. Building Contractors, Inc., 174 So.2d 16 (Fla. 1965).
While conceding that the facts underlying Spiro's death were unknown, the deputy nevertheless found that the worker's death was compensable, only by making certain assumptions and inferences that were not based on competent, substantial evidence. We recently condemned a deputy from impermissibly stacking inference upon inference to ultimately find a claim compensable. See Girdley Construction Co. v. Ohmstede, 465 So.2d 594 (Fla. 1st DCA 1985). Accordingly, we adopt the following language from an opinion of a New York appellate court and apply it to the case at bar: "[A]ny continuity of events to establish that ... [the employee's death] arose in the course of his employment is purely a matter of conjecture." Ryan v. Trojan Bar & Grill, 98 App.Div.2d 889, 470 N.Y.S.2d 877, 879 (N.Y. App. Div. 1983) (emphasis supplied); See also Malacarne v. City of Yonkers Parking Authority, 41 N.Y.2d 189, 391 N.Y.S.2d 402, 359 N.E.2d 992, 997 (1976).
Reversed.
SMITH and NIMMONS, JJ., concur.