541 So.2d 701 (1989)
Kenneth J. CHRISTIAN, As Personal Representative of Estate of Constance Ann Christian, Deceased, Appellant,
v.
GREATER MIAMI ACADEMY and Crawford and Company, Appellees.
No. 87-1537.
District Court of Appeal of Florida, First District.
March 28, 1989.
Rehearing Denied April 28, 1989.
*702 Tina M. Cook of Underwood, Gillis & Karcher, P.A., Miami, for appellant.
Jay M. Levy of Hershoff, Levy & Swartz, P.A., Miami, for appellees.
ERVIN, Judge.
The estate of the deceased claimant[1] appeals from an order denying her claim for past due temporary total disability (TTD) benefits, medical care, and wage-loss (WL) benefits or permanent total disability (PTD) benefits. Although we affirm the denial of PTD, we agree with appellant that the deputy erred in denying the claim for medical care, TTD and WL benefits, and reverse and remand with directions.
In an earlier appeal from an order which had awarded claimant TTD benefits and medical care, this court held that the claimant was not entitled to TTD benefits resulting from her psychiatric condition, because such condition was not a compensable post-traumatic mental disorder, directly and immediately resulting from her industrial injury, and therefore reversed and remanded the case to the deputy for further proceedings. Greater Miami Academy v. Blum, 466 So.2d 1263 (Fla. 1st DCA), review denied, 476 So.2d 672 (1985). Following remand, the deputy reevaluated the evidence and determined that although claimant did not achieve maximum medical improvement (MMI) until October 30, 1985, she was nevertheless able to return to work without medical restrictions after October 13, 1982.[2] The deputy therefore concluded that claimant, having failed to conduct an adequate job search after October 13, 1982, was neither entitled to TTD benefits from a physical standpoint after that date, nor entitled to any WL benefits after the date of MMI, because she had not suffered any permanent impairment (PI) as a result of her injury.
Initially, we reject the appellant's argument that the deputy after remand was bound by the law of the case previously established. It is the appellant's contention that because this court reversed only that portion of the deputy's order awarding TTD benefits caused by her psychiatric condition, the unappealed portion of the order awarding TTD benefits stemming from her physical condition became binding on the deputy on remand, and that the deputy therefore had no authority to revisit the issue of claimant's entitlement to TTD caused by her physical injuries.
This position is not correct. Appellant's argument that the earlier order found that claimant had suffered TTD from a physical standpoint is a mischaracterization of the language in that order, which stated only that "the vast preponderance of the evidence shows that she has not yet reached maximum medical improvement from a physical point of view." (Emphasis added.) There was no explicit finding therein that claimant's TTD status was caused by her physical condition.
A finding that a worker has not attained MMI clearly is not a finding that the worker is temporarily disabled. MMI, as defined in Section 440.02(22), Florida Statutes (1981), "means the date after which further recovery from, or lasting improvement to, an injury or disease can no longer reasonably *703 be anticipated, based upon reasonable medical probability." Temporary total disability, on the other hand, is simply that healing period of time, during which an employee is, by reason of the injury, totally disabled and unable to work. See Concord Realty Corp. v. Romano, 159 Fla. 1, 30 So.2d 495 (1947). The deputy therefore was not precluded by the law of the case from considering whether claimant was entitled to TTD benefits following the date that the employer/carrier (E/C) terminated the payment of same.
Although the finding of the deputy that the claimant was able to return to work after October 13, 1982, is supported by the record, we nevertheless reverse the denial of all temporary and permanent benefits through the date of January 30, 1986, which was the date that the E/C first sent WL forms to claimant and notified her of her responsibility to conduct a work search. The rule is well-established that an E/C's failure to notify a claimant of his or her requirement to perform a job search after terminating benefits constitutes a basis for excusing the necessity for conducting such search. See Morris v. Metal Indus., 491 So.2d 312 (Fla. 1st DCA 1986); DeFrees v. Colt and Dumont/Hit Sales, 483 So.2d 848 (Fla. 1st DCA 1986); Dan's Plumbing v. Smith, 410 So.2d 941 (Fla. 1st DCA 1982).
In regard to the denial of PTD or WL benefits, we agree that the deputy's determination of an MMI date of October 30, 1985, is supported by competent, substantial evidence in the form of Dr. Derbenwick's medical opinion and therefore affirm that finding. We also agree that the evidence supports the deputy's denial of PTD benefits, because the record fails to show that claimant met the statutory standard required for an award of PTD benefits: that she was "not able uninterruptedly to do even light work due to physical limitation." § 440.15(1)(b), Fla. Stat. (1981).
We do not, however, find substantial, competent evidence to support the deputy's denial of WL benefits on the ground that claimant's industrial accident did not cause claimant to suffer any PI. On this issue, we consider that the parties were bound by their pretrial stipulation, wherein claimant's position was that she had suffered a PI per the AMA Guides in an amount of fifteen percent, contrary to the E/C's position of six percent. The rule is clear that a stipulation of fact should not be ignored or set aside in the absence of fraud, overreaching, misrepresentation, withholding of the facts by an adversary, or some element as would render the agreement void. See Steele v. A.D.H. Bldg. Contractors, 174 So.2d 16 (Fla. 1965); Espada Enters. v. Spiro, 481 So.2d 1265 (Fla. 1st DCA), cause dismissed, 491 So.2d 280 (1986). Although the extent of PI was in dispute, the parties had nonetheless agreed that claimant had sustained some degree of impairment. To be entitled to permanent WL benefits, the injured worker is only required to establish that he or she suffered any PI pursuant to generally accepted medical standards for determining impairment. See § 440.15(3)(b)1, Fla. Stat. (1981).
While the deputy had the prerogative, if the facts presented at the hearing were at variance with those agreed upon, and good cause existed for such modification, to reject the parties' stipulation agreeing that claimant had suffered some degree of PI, Leeds Shoes v. Cucuzza, 429 So.2d 401 (Fla. 1st DCA 1983), the facts at bar reflect only that there was conflicting medical testimony regarding whether claimant had suffered any PI. There was not an absence of any evidence going to that issue. The rule that a deputy has the right to accept the testimony of certain physicians and reject that of others, with the result that such finding will be upheld if supported by competent, substantial evidence, S and S Stove Repair, Inc. v. Dumas, 465 So.2d 644 (Fla. 1st DCA 1985), does not, in our view, apply to cases where the parties have stipulated to the existence of certain facts, and their agreement is supported by the evidence, albeit conflicting.
In the case at bar, Dr. Stose, an orthopedist, stated that the industrial accident had caused claimant to suffer a PI of from five to six percent. The deputy, nevertheless, rejected Dr. Stose's permanency rating on *704 the ground that he had failed to make proper use of the AMA Guides. Dr. Stose, however, clearly testified that his rating was based on the AMA Guides.[3] Under such circumstances, the deputy was not authorized to reject the facts to which the parties had stipulated, because the record supports the stipulated facts, and nothing in the record shows the existence of such conditions as fraud, overreaching, or misrepresentation, requiring the voidance of the agreement.
To conclude: we reverse the deputy's denial of TTD benefits and medical care from October 13, 1982, until the date claimant was determined to have reached MMI  October 30, 1985, and we also reverse the denial of the claim for WL benefits from October 30, 1985 until January 30, 1986. The denial of PTD benefits is affirmed.
AFFIRMED in part, REVERSED in part and REMANDED for further consistent proceedings.
BOOTH and THOMPSON, JJ., concur.
NOTES
[1] The personal representative was substituted as party appellant in place of the claimant, Constance Ann Christian (formerly known as Constance Ann Blum), who died during the pendency of this appeal.
[2] This was the date that one of the attending physicians determined that claimant was able to return to work. Based upon this medical opinion, the employer/carrier terminated benefits to claimant as of such date.
[3] The deputy rejected Dr. Stose's permanency rating because Dr. Stose had "extrapolated" a bit of it from his own experience, rather than relying only on the AMA Guides. In so doing, the deputy apparently overlooked Dr. Stose's testimony that he based five percent of his permanency rating on the AMA Guides for a patient who had a ruptured disc and was totally asymptomatic. Dr. Stose then indicated that claimant's syndrome was a little bit worse than someone who has had a ruptured disc and is somewhat symptomatic. He indicated that her arthritic changes made her disability somewhat greater than five percent. It was only this one percent, making the total permanency rating six percent, that Dr. Stose extrapolated from his own experience in treating patients with ruptured discs and pre-existing arthritic conditions. Clearly, at least five percent of claimant's permanency rating was squarely based on the AMA Guides and was not attributable to her pre-existing arthritic condition.